520

## UNITED STATES v. STEWART.
### No. 5379.

Court of Appeals of District of Columbia.
Argued March 10, 1932.
Decided April 4, 1932.

Leo A. Rover, John W. Fihelly, Lawrence A. Lawlor, and Annabel Hinderliter, all of Washington, D. C., for appellant.

R. H. McNeill, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

GRONER, Associate Justice.

This is an appeal from a judgment on a war risk insurance policy. At the close of plaintiff's case and again at the close of all the evidence, a directed verdict in favor of defendant was asked on the ground that the evidence did not establish a prima facie case. The court overruled these motions, exceptions were taken, and the jury returned a verdict for the plaintiff on which judgment was entered, and from this judgment this appeal is taken.

The only error assigned is the refusal of the court to direct a verdict and the refusal of the court to grant a new trial.

The applicable rule in such circumstances is stated by the Supreme Court in Slocum v. New York Life Insurance Co., 228 U. S. 364, 369, 33 S. Ct. 523, 57 L. Ed. 879, and approved on an appeal from this court in Gunning v. Cooley, 281 U. S. 90, 93, 50 S. Ct. 231, 74 L. Ed. 720. The rule is that, if, "on the trial of the issues of fact in an action at law before a Federal court and a jury, the evidence, with all the inferences that justifiably could be drawn from it, does not constitute a sufficient basis for a verdict for the plaintiff or the defendant, as the case may be, so that such a verdict, if returned, would have to be set aside, the court may and should direct a verdict for the other party."

The effect of this rule is to make it the duty of the court to grant a peremptory instruction in every case in which the evidence is so overwhelming as to leave no room to doubt what the fact is, but equally to leave the case to the jury where the evidence is such that fair-minded men may honestly draw different conclusions from it.

In this case the only question was whether plaintiff, while a soldier, had sustained "total, permanent disability" as that term is used in the statute. Act October 6, 1917, 40 Stat. 409 (now 38 USCA § 511). As the term is construed by the regulations promulgated by the Director of the United States Veterans' Bureau pursuant to authority conferred by 40 Stat. 399, § 13, now 38 USCA § 426, "total and permanent disability" means any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation. This imposed a burden on the plaintiff to establish by a preponderance of the evidence such total and permanent disability, and this makes it our duty to examine the evidence

to ascertain if it was sufficient to warrant the finding of the jury in favor of the plaintiff.

Viewed most favorably to plaintiff, the evidence shows that, when inducted into the army, plaintiff was of good health, but that while performing his military duty in France his spine was injured by a bursting shell, causing thereafter frequent hemorrhages from the throat which continued throughout his service. He was discharged in May, 1919. In August of that year, he did some work as superintendent of an oil flotation plant, but was unable to work regularly because of physical disability. He was next employed in Colorado making recommendations for the operation of a plant located there. The work was temporary and not manual. Then he went to another place in Colorado and worked a day, and some days later went to California where he did work lasting about a month. In the latter part of January, 1920, he secured work in New Mexico checking oil and ore extraction. This lasted approximately three months. He then went to Mexico where he worked some 8 or 10 days, thence to New Mexico, where he worked 2 or 3 days, thence back to Mexico where he worked 4 or 5 months, and thence to Nevada, where he worked for several months, except for two weeks when he went to Reno for examination by the United States Veterans' Bureau. In the various jobs the work was of a supervisory character—such, for instance, as checking precipitation, and examining and correcting blueprints—classified as clerical, and in no instance involved manual labor. At intervals during all of this time plaintiff was frequently confined to his bed by illness.

While at work in New Mexico, plaintiff was examined by a physician, who found him suffering from "tuberculosis with râles, spitting blood, and night sweats, with a temperature running as high as 103 degrees." From 1923 to 1928, plaintiff testified that he did no work at all and was unable to do any, and in 1928 he came to Washington, and upon examination was found to have chronic pulmonary tuberculosis. Plaintiff's earnings during the period he was at work were not inconsiderable, but his testimony is that in an effort to keep at work he spent more for medical attention than he earned. His evidence of recurring illnesses and inability to work except intermittently was supported by a number of professional and lay witnesses. Mrs. Willcox, at whose house he boarded aft-

er his return from the war, testified that at that time he was in bad health, pale, and with frequent temperature, and that she found blood on his pillow when she made up his bed in the mornings, and that he frequently had medical attention until June, 1919, when he first went to work. Other lay witnesses who had known him before he went into the army, and who saw him in 1922 and 1923, testified to the change in his physical condition as shocking. The evidence of the physicians covered the period from 1920 up to the date of trial. Dr. Lee, who examined him in 1920, found him suffering from tuberculosis and unable to follow continuously a gainful occupation. Dr. Smith, who examined him in 1922, found that he was having hemorrhages, running temperature, and with severe chills. Dr. Phillips, who examined him in 1923, found tuberculosis and poor general condition. During that year he entered the veterans' hospital at Ft. Lyon, Colo., and remained in bed continuously for two years and three months. From this hospital he went to Mount Alto Hospital, and then again to a government hospital, then to the Mayo Clinic, and then after a brief space in which he did no work he reentered the government hospital at Tacoma, Wash., and from this hospital he returned to Washington, at which time he instituted the present action on the policy of insurance.

The evidence is very lengthy, and we have only referred to it briefly. We think, however, taken as a whole, there was quite enough to take it to the jury, and we have already said in several cases that the mere fact that a former soldier holding a war risk policy of insurance may have worked for considerable periods of time during which he claimed to be permanently disabled is not conclusive, and that the real question is not whether he worked but whether he was able to work without material injury to his health, and so in this case the issue is not foreclosed because it appears that plaintiff did some work. That fact was material and proper for consideration by the jury, but should not defeat his right to recover if the jury should find that, in spite of temporary work, even for substantial periods of time, the disability which the statute covers in fact existed, and that question was, as we have already stated, under all the circumstances for the jury to decide.

In this view, we are unable to say that the evidence taken as a whole, when viewed in the light most favorable to the plaintiff,

does not justify the conclusion of the jury that he was totally and permanently disabled, and therefore we feel it our duty to affirm the judgment below.

Affirmed.