**230**

THORNE et al. v. UNITED STATES.
No. 790.

Circuit Court of Appeals, Tenth Circuit.
July 3, 1933.

John E. Haltigan, of Wichita, Kan., for the United States.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge.

This is an action upon a $10,000 war risk insurance policy brought against the United States by the executor of the last will and testament of Clarence Henry Thorne, deceased, and Mary E. Thorne, beneficiary, under both the policy of insurance and the will.

By stipulation, the evidence on the trial was confined to the question of the total and permanent disability of the deceased at the time of his discharge from the army. At the close of the evidence, upon motion of the appellee, the court directed a verdict for the government. The appellants saved an exception.

The evidence disclosed the following facts: The insured enlisted in the military service on May 10, 1917, and was honorably discharged on May 3, 1919. The policy was issued while he was in the service, and in the agreed statement of facts it is said "the premiums thereon were paid up to and including July 2, 1919." The insured was sent to France in December, 1917. The medical record shows that he took a severe cold from exposure after landing about January 10, 1918. He was confined in four hospitals from January 13, 1918, until March 9, 1918, during which time he had a bad cough, lost his voice, and was diagnosed as having laryngitis. His clinical record shows "tonsils somewhat enlarged; pharynx rather granular, translucent; cords very red, do not approximate well; impairment over right apex; definite impairment over right lower lobe behind; breath sounds and whisper voice sounds increased over right apex." After he left the hospital he continued to have a cough which never left him, was listless, exhausted, weak, and coughed during the balance of his army service.

Four of his buddies in the army testified that the deceased had a severe cough when he came from the hospital which never left him while he was in the service; that he did not appear to be well, seemed to be sick and pale, and had a hacking cough. There was testimony that before he went into the army he was strong and robust. Following his discharge at Camp Devens, he took a month's rest before engaging in clerical work, but continued coughing, looked thinner, occasionally spit up blood, had night sweats, and gradually declined in health until he collapsed about July, 1921.

He was employed as a clerk in a paper mill from June, 1919, to June, 1921, earning from $75 to $125 per month, but he had to lay off two or three days a month to rest. He was ambitious, and his working conditions were favorable; the office being well lighted and well ventilated. In October, 1921, the doctors diagnosed his condition as tuberculosis in both lungs, and that he had no chance of recovery. He was advised to go to New Mexico, and did so. He became a bed patient there from the time of his arrival in the fall in 1921 until he died in the month of June, 1927, during which time he received excellent care and treatment.

Dr. John W. Gunn testified that he examined the insured in June, 1921, and diagnosed his disease as an advanced case of pulmonary tuberculosis. It was his opinion, from the examination and history, that the disease had been running along two, three, or four years.

Dr. Theron G. Yeomans testified that he examined the insured in September, 1921, and his condition was such that he felt entirely sure he had tuberculosis when he left the army, and that his condition was such that he could not have performed labor of any kind at the time of his discharge.

Dr. L. S. Peters found him suffering from advanced tuberculosis when he examined the insured in October, 1921. In answer to a

hypothetical question he said: "It is my opinion he had tuberculosis in 1918 when he manifested those indirect symptoms in the army and that he had tuberculosis in 1919 when he was discharged from the army." He further testified that the fact that the insured worked for two years did not change his opinion. "That tuberculosis in its incipiency constitutes total and permanent disability; the very minute it is found it can be diagnosed he is totally disabled and shouldn't work."

Dr. J. A. Reidy testified that he had examined the insured after he had come to New Mexico and found him suffering from advanced tuberculosis; that he thought he had tuberculosis of the lungs when he was examined in the army. "That laryngitis-tuberculosis is generally secondary from the lung condition, that he had tuberculosis first and then laryngitis following the chest condition."

The Veterans' Bureau record of the insured examined in September, 1921, in August, 1922, in March, 1923, and October, 1923, leave no doubt that he was permanently and totally disabled at the time of those examinations.

■ The sole question presented on this appeal is whether or not the trial court erred in directing a verdict for the United States. The appellants had the burden of showing that the insured was permanently and totally disabled when the policy of insurance lapsed in the summer of 1919 for nonpayment of premiums. If there was some substantial proof of that condition, the appellants were entitled to have the case submitted to the jury.

■ While the evidence is not conclusive, certainly there is some evidence that the insured had tuberculosis in its early stages at the time he was discharged from the army, and before his policy lapsed. The record discloses his tubercular condition in January, 1918, resulting in laryngitis, the losing of the voice for two months, the impairment over the right apex of the lung, and a definite impairment over the right lobe behind. We then have a history of weakness, cough, spitting blood, and a generally run-down condition until he was discharged from the army. In September, 1921, two years later, he had far-advanced tuberculosis, and his condition was then such that every effort of medical science to arrest the condition was hopeless. While a doctor in 1921, without any past history, could not say with certainty, when the condition of tuberculosis developed, but an examination coupled with his condition in 1918, readily supports a diagnosis of a tubercular condition existing from January, 1918, on, as shown by the record in this case.

We have then a tuberculosis preceding January, 1918, resulting in chronic laryngitis with a lung involvement at that time; we have it reaching the incurable stage in 1921. Three doctors testified that in their judgment when he was discharged from the army the disease had advanced to the stage where it was incurable, and this was borne out by the fact that the record from 1921 on to arrest the disease was fruitless.

In the light of these facts, there can be no question but that the verdict for the government was improperly directed. Bartee v. United States (C. C. A.) 60 F.(2d) 247; United States v. Lesher (C. C. A.) 59 F.(2d) 53; United States v. Stewart, 61 App. D. C. 115, 58 F.(2d) 520; Green v. United States (C. C. A.) 57 F.(2d) 9.

The judgment is reversed, and the case is remanded for a new trial.