432

WGN, Inc., v. FEDERAL RADIO COM-
MISSION et al.

No. 5939.

Court of Appeals of the District of Columbia.
Argued Nov. 6, 1933.
Decided Dec. 11, 1933.

Louis G. Caldwell and Arthur W. Schar-
feld, both of Washington, D. C., for appel-
lant.

George B. Porter, Fanney Neyman, Ben S.
Fisher, and Ralph L. Walker, all of Wash-
ington, D. C., for appellee.

Paul D. P. Spearman, of Washington, D.
C., for interveners.

Before MARTIN, Chief Justice, and
ROBB, HITZ, and GRONER, Associate Jus-
tices.

MARTIN, Chief Justice.

This is an appeal from a decision of the
Federal Radio Commission, granting the ap-
plications of broadcasting stations WBBM
and KFAB for a modification of their broad-
casting licenses so as to permit them to op-
erate in synchronization during certain night
hours.

Synchronization is the operation of two
broadcasting stations simultaneously upon the
same frequency, and with identical programs.
It is a comparatively new advancement in ra-
dio operation, and is not yet regularly recog-
nized as a method of broadcasting by the Ra-
dio Commission.

The appellant, WGN, Inc., owns and op-
erates broadcasting station WGN, located at
Chicago, Ill., operating full time on a cleared
channel of 720 kilocycles with power of 25
kilowatts. It is a subsidiary of the Tribune
Company, the publisher of the Chicago
Tribune.

Broadcasting station WBBM is a subsidi-
ary of the Columbia Broadcasting System,
Inc., located at Chicago, Ill., owned and op-
erated by WBBM Broadcasting Corporation.
Broadcasting station KFAB, located at Lin-
coln, Neb., is owned and operated by the
KFAB Broadcasting Company. These two
stations were both licensed for the use of 770
kilocycles cleared channel; the former with
25-kilowatt power, the latter with 5-kilowatt
power (C.P. 25 kilowatts). These stations
divided time upon this channel; WBBM
having four-sevenths and KFAB three-
sevenths time of operation. By mutual agree-
ment they operated simultaneously in the day-
time and shared time at night by an arrange-
ment whereby WBBM had the evening hours
from 7 to 10 p. m. and KFAB had the hours
from 10 p. m. to midnight.

On March 30, 1932, these two stations sev-
erally filed with the Commission interrelated
applications requesting authority to operate
together in synchronization from 10 p. m. to
midnight; no change being requested for
daytime operation. The effect of the request-
ed modification of their licenses, if granted,

would be to authorize WBBM to broadcast alone on 770 kilocycles from 7 to 10 p. m. at night, and in synchronization with KFAB from 10 p. m. to midnight, thus in effect giving WBBM full time of operation. No change was requested in respect to the operation of KFAB, except that from 10 p. m. to midnight it would broadcast in synchronization with WBBM instead of independently as theretofore.

The Commission upon receipt of the applications designated them for public hearing before an examiner duly appointed. The examiner after hearing testimony of various expert witnesses reported in favor of granting the applications experimentally; that this was the first complete and satisfactory synchronization experiment proposed to the Commission in which the stations to be synchronized were so separated that their good service areas did not overlap; that the synchronization operations proposed by the applicants would be conducted by the executives and engineers of the applicants in conjunction with those of the Columbia Broadcasting System and of the Bell Telephone Laboratories, Inc.; that the training and experience as well as the financial resources available to these parties for conducting such operations would add considerably to the existing knowledge upon the subject of common frequency broadcasting; that these tests would be conducted in such a way as to prove or disprove the practicability of common frequency broadcasting overcoming operating conditions; and that this would be important in advancing the science and art of broadcasting. The examiner stated that according to the evidence the service rendered by the stations separately was less satisfactory than might be expected during at least two-thirds of the time if the stations were permitted to operate synchronously.

The report of the examiner was considered by the Commission and was approved. The Commission accordingly ordered that the applications for a modification of the station licenses of WBBM and KFAB to synchronize the two stations during the specified night hours should be and the same was granted experimentally.

Thereupon station WGN appealed from the Commission's decision, under section 16 of the Radio Act of 1927, as amended July 1, 1930 (46 Stat. 844, 47 USCA § 96 (a) (3), which provides in part as follows:

"(a) An appeal may be taken, in the manner hereinafter provided, from decisions of the commission to the Court of Appeals of the District of Columbia in any of the following cases: * * *

"(3) By any other person, firm, or corporation aggrieved or whose interests are adversely affected by any decision of the commission granting or refusing any such application or by any decision of the commission revoking, modifying, or suspending an existing station license."

█ It is not claimed by WGN that any interference will result between the operation of its station and the synchronized broadcasting of the other two stations, if such be permitted. So far as appears, there had been no such interference between WGN operating upon 720 kilocycles and WBBM operating alone upon 770 kilocycles, although both were located in Chicago, and it does not appear that the proposed synchronization of WBBM and KFAB from 10 p. m. to midnight would cause any interference between the stations. But it is claimed by WGN that, inasmuch as the fourth zone, in which both Nebraska and Illinois are located, is already over quota, and inasmuch as the state of Illinois is likewise over quota, the addition of increased nighttime operation for two hours by WBBM resulting from the proposed synchronization would subject WGN and all other stations located in Chicago, and indeed in Illinois likewise, to increased danger of loss or reduction of facilities, under the provisions of the Act of Congress approved March 28, 1928 (45 Stat. 373 [see 47 USCA §§ 89, 91]), commonly called the Davis Amendment. We think this objection is answered by the fact that the Commission's decision permits only an experimentation and is not a final order modifying the licenses of the respective stations. Further action of the Commission must be had before the modification becomes final. Moreover, inasmuch as synchronization is not yet recognized by the Commission as a regular broadcasting service no addition is made to the quota of either the city, state, or zone involved, because of the present order.

█ It is also contended by WGN that the Commission's decision subjects it to an economic injury through the allocation of additional facilities to the city of Chicago. This complaint rests upon the theory that the modification will increase the competition among broadcasting stations in Chicago, and thereby inflict a pecuniary loss upon each of the stations already established therein, including WGN. This complaint, however, is so vague, problematical, and conjectural as not to furnish a present substantial objection to the Commission's decision.

WGN also contends that the Commission's decision places an additional obstacle in the way of securing increased power for its station, which increased power will improve its broadcasting service. Again we may say that in our opinion this objection is purely conjectural and rests upon no substantial basis. Telegraph Herald Company v. Fed. Radio Commission (Sanders Bros. Radio Station, Intervener), 62 App. D. C. 240, 66 F.(2d) 220; Edward Hines Yellow Pine Trustees v. United States, 263 U. S. 143, 44 S. Ct. 72, 68 L. Ed. 216.

In answer to all of appellant's complaints, it may again be noted that the authority granted by the Commission's decision to the applicant stations is granted experimentally only, and, until they apply for and are granted a regular license for this purpose, the decision of the Commission is conditional and only for the purpose of conducting experiments which may prove wholly unsuccessful and never be carried into the regular broadcasting service.

Complaint is made by the appellant that the Commission failed to serve it with a written notice of the applications of WBBM and KFAB prior to the hearing had by the examiner, and contends that such failure renders the decision void or at least reversible upon this appeal. We may say in answer to this that in our opinion under the circumstances the appellant was not entitled to a written notice for the reason that it was not then a party "aggrieved or whose interests are adversely affected" by the proposed modification of the appellees' licenses for experimental purposes.

The decision of the Commission is accordingly affirmed.