## ROBERTS v. UNITED STATES.
### No. 537.

Circuit Court of Appeals, Tenth Circuit.
March 31, 1932.

S. R. Owens, of Denver, Colo., for appellant.

Richard A. Toomey, Atty. for Veterans' Administration, and John G. Reid, Asst. U. S. Atty., both of Denver, Colo. (Ralph L. Carr, U. S. Atty., of Denver, Colo., and William Wolff Smith, Sp. Counsel, Veterans' Administration, of Washington, D. C., on the brief), for the United States.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

George A. Roberts brought this suit to recover upon a war risk insurance policy. After the trial and prior to the perfection of the appeal Roberts died, and the present plaintiff was substituted in her capacity as administratrix of his estate. Upon the trial at the close of the plaintiff's case, the court upon motion of defendant's counsel directed a verdict in favor of the defendant, upon which action of the trial court the appeal in this case is based.

A running sketch of the testimony adduced on behalf of the plaintiff is as follows: Roberts enlisted in the United States Navy in January, 1916, and served therein continuously for four years and twenty-two days. While in the service he applied for and received a regular war risk insurance policy in the amount of $10,000, which is the basis of the suit. Premiums were paid thereon and the policy remained in force until September, 1919. He was honorably discharged from the service in the spring of 1920. Such discharge was based upon the expiration of his enlistment period with a certificate of physical disability. In May of 1919 and for several months succeeding said date he was in a hospital under observation and treatment for bronchial trouble which was later diagnosed as tuberculosis. While in the hospital, according to his own testimony, he felt weak, ran a high fever which was followed by a few hemorrhages, the first of these being in May, 1919. In January, 1920, he was transferred to the Naval Hospital at Fort Lyon, Colo., and was discharged in April, 1920. He then went to the United States Public Service Hospital at Deming, N. M., where he remained until June, 1920. He was then transferred to the Government Hospital at Fort Bayard, N. M., at which place he remained until December, 1920, receiving treatment for tuberculosis. While at the latter institution he ran a temperature and had night sweats. About this time he went to Denver and there remained up to the time of the trial. The work record of the insured, as disclosed by the testimony, involved employment by the Clason Map Company, beginning in February, 1921, where he received a salary of from twenty to twenty-five dollars per week. His duties were of a clerical nature. From May to December, 1921, he was in the employ of the Baldwin Piano Company at a salary of $20 a week, engaged in house to house canvassing. From January to May, 1922, he was in the employ of the Paramount Lubricant Company at a salary of $90 per month, engaged as a filling station attendant. From May, 1922, to August, 1928, he was employed as a police officer and detective by the city of Denver at a salary ranging from $120 to $175 per month, at which latter date he was retired from the police service upon a basis of one-half pay. For four months during the year 1926 he was on leave without pay from the police department of Denver in training at Brooks Field, Tex., in the air service, receiving a promotion to second lieutenant and receiving a salary of approximately $250 per month. During portions of the period covered by this employment he testified that he was not feeling well, but as an employee of the police department he served in various capacities from desk sergeant to walking a beat as a regular patrolman. There appears to be no affirmative evidence that during this period

he was particularly favored by his superior officers in the matter of the assignment to duty. Upon his retirement in August, 1928, he did no further work of any kind. The testimony of a doctor in his behalf was to the effect that the insured had been first examined in May, 1922, and various examinations were made and treatment given through the succeeding years up to the time of his death. The first examination of the insured resulted in a diagnosis of active tuberculosis and rest, fresh air, good food, and particularly plenty of rest were prescribed.

The only point in the case is the determination of whether or not the proofs are sufficient to show that the insured became totally and permanently disabled during the time his policy of insurance was in force and effect, or before September 30, 1919, which, if answered in the affirmative for purposes of recovery, involves also the determination that he remained so totally disabled up to the time of the trial and that while the policy was in force there was a reasonable certainty that his disabled condition would continue through the remainder of his life. The evidence offered on behalf of the plaintiff tends to show that the insured was afflicted with tuberculosis at least as early as May, 1922, from which disease he continued to suffer at intermittent periods up to the time of the trial. The inception of the disease is indicated by the testimony of the physician as dating back to the time when his policy was still in force by the payment of premiums prior to September, 1919. This situation is to be considered in connection with the record of work performed at a substantial wage, covering the period between the time of the lapse of his policy up to the time of the trial, in determining whether or not there was total and permanent disability which would entitle him to recover. Such total and permanent disability within the definition laid down by the Department must be such as to make it impossible for him to continuously follow a substantially gainful occupation with reasonable certainty that it would continue throughout his life. Analyzing all the facts in this case in the scope of this definition of total and permanent disability, we are unable to say that the trial court was wrong in sustaining the motion for a directed verdict. In the light of modern medical science it is well known that the disease of tuberculosis may with care and attention be brought to an arrested state, and it is likewise well known that when the disease is properly treated that a person suffering from

it may respond and be able to carry on in a variety of different vocations of a substantially gainful nature. The difficulty frequently arises in attempting to justify the disability claimed in the face of a long period of substantially uninterrupted employment by the insured at a substantially gainful wage. It would require the widest range of indulgent sympathy to say that a man who was almost continuously employed at good living wages in various kinds of employment from February, 1921, until August, 1928, was nevertheless during all that time totally and permanently disabled within the scope of the accepted definition or within any practical understanding of total and permanent disability. If for the purpose of strengthening the proofs of the totality of his disability, the theory be indulged that it was detrimental to his health to have worked under the conditions in his case, then the proofs indicating the reasonable certainty of the continuance of the disability through life, or its permanency, determined as at the time the policy was in force, are correspondingly weakened.

Citation of authority is only helpful in a consideration of the general principles controlling suits of this character, as it is manifest that each case must rest largely upon its own facts and circumstances. Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170. The cited case is in many respects similar in facts to the case at bar, and it was there held that, in the face of a showing of an employment in a substantially gainful occupation for a considerable period of time by one seeking relief under the terms of a policy as here considered, even though he may have shown himself to be suffering from tuberculosis, he had not discharged the burden placed upon him as plaintiff in the case of showing that he was totally and permanently disabled at all the times necessary to mature the policy. The authorities are exhaustively cited in this well-considered opinion of the court and a reiteration of them here would serve no useful purpose. A case somewhat similar as to facts in which relief was denied to the plaintiff is United States v. McLaughlin, 53 F.(2d) 450 (C. C. A. 8). A more recent case in our own court is Hirt v. United States, 56 F.(2d) 80 (C. C. A. 10), decided January 26, 1932. Both of the Tenth Circuit cases stress the point that it is incumbent upon the plaintiff to produce some substantial proof that, admitting plaintiff was suffering from the disease complained of before the time that his policy elapsed,

it must also be established that his disability was then one which would with reasonable certainty continue throughout his life. The evidence in the case at bar does not meet this standard of proof and, when taken in connection with his unusual extended work record with little interruption at a good living wage, leads us to the conclusion that the trial court was right in directing a verdict for the defendant, and its judgment is therefore affirmed.