## UNITED STATES v. FITZPATRICK.
### No. 676.

Circuit Court of Appeals, Tenth Circuit.

Jan. 3, 1933.

William Earl Wiles, Asst. U. S. Atty., of Oklahoma City, Okl. (Herbert K. Hyde, U. S. Atty., and Fred A. Wagoner, Asst. U. S. Atty., both of Oklahoma City, Okl., and W. C. Pickett, Atty., Veterans' Administration, of Washington, D. C., on the brief), for the United States.

A. G. C. Bierer, Jr., of Guthrie, Okl. (Bierer & Bierer, of Guthrie, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

Fitzpatrick brought this action against the United States to recover on a policy of war risk insurance. Trial by jury was waived and the action tried by the court. At

the conclusion of the evidence, each party moved for judgment and requested special findings of fact and conclusions of law. The court found that Fitzpatrick was discharged from the Army on April 16, 1919, that at the time of discharge he was permanently and totally disabled within the meaning of the World War Veterans' Act 1924, as amended (see 38 USCA § 421 et seq.), and that his policy of insurance was in full force and effect at such time.

The only question before us is whether there is any substantial evidence to support such finding. Storey v. United States (C. C. A. 10) 60 F.(2d) 484; United States v. Peet (C. C. A. 10) 59 F.(2d) 728, 729; United States v. Tyrakowski (C. C. A. 7) 50 F.(2d) 766; United States v. Phillips (C. C. A. 8) 44 F.(2d) 689.

The evidence, considered in the light most favorable to Fitzpatrick, established the following facts: He enlisted in the Army on April 25, 1918, and was sent to Camp Travis. While there he was given typhoid inoculations and as a result was sick for several days. Later he was sent to France, and sometime in July or August, 1918, was gassed. While in the field infantry, he contracted influenza, which caused a weakened and run-down condition. On September 12, 1918, he again went into active service, and on September 19, 1918, was wounded in the left knee and right foot. After spending some time in the base hospital, he was returned to the United States as a casual and discharged on April 16, 1919. He went to his home at Mulhall, Oklahoma, where he remained until June 1, 1919. During the seven years following this, he worked at many employments. He was employed by Ray Peterson Milling Co. as an oiler for about four months, but was frequently unable to work on account of sickness, and left such employment upon advice of his doctor to obtain outside work. Shortly thereafter, he obtained employment with the Arkansas Valley Gas Company and worked first in the storage room and later as a salesman. He continued in this employment until May, 1920, but was off about one-third of the time on account of sickness. He worked on a farm in Kansas in the summer of 1920 and quit upon advice of a doctor. From September, 1921, to March, 1922, he worked for the Barnsdall Refining Company. Following that, he went to work for his brother at the Co-operative Dairy at Ponca City, but frequently was unable to work on account of sickness. From September, 1922, to April, 1923, he worked for Dillard Clark as a

farm boss. While at this employment he was ill several times and finally left with the expectation of receiving vocational training. In 1923 he worked for a short time with the Santa Fé Railway Company and the Sinclair Oil Company. From November, 1923, to August, 1924, he worked for the Phillips Petroleum Company, but was unable to work about one-third of the time because of sickness. Thereafter, he tried to farm for three years but was unable to harvest his crops on account of illness. Later, he worked for three months in a garage as a helper. He quit upon being informed that, unless he could work more regularly, someone else would be employed in his place. Since his discharge from the Army, he has appeared undernourished and nervous, has had frequent headaches and dizzy spells, and his health has gradually failed.

He was examined by Dr. Childers in 1921 or 1922, and again in 1925 or 1926. The doctor testified that Fitzpatrick appeared undernourished and nervous, had some stomach ailment and pleurisy, and was unable to work continuously at any substantially gainful occupation. In 1929 Dr. Ringrose treated Fitzpatrick for a kidney infection. In March, 1930, Dr. Ringrose again visited Fitzpatrick and found him in a highly nervous condition, and complaining that someone was pressing on his abdomen. Dr. Ringrose testified that Fitzpatrick's disability was principally mental, due to strain, that in his opinion, based on the history of the case and from observation, a state of nervous exhaustion had been going on for a long period of time, that it probably started during his service in the Army; and that in his opinion Fitzpatrick had not been able to follow continuously any substantially gainful occupation since his discharge from the Army.

Fitzpatrick testified that he had not been able to work continuously since his discharge from the Army and for that reason he had been unable to hold a position for any appreciable length of time; that when he attempted to work he would become nervous, his legs would shake and he would become so weak he was unable to stand on his feet, and that at night his muscles would quiver, jerk and cramp, and prevent him from sleeping and securing proper rest. He does not attempt to classify his disease by name or trace its origin definitely to any particular causes; but that is not necessary. United States v. Tyrakowski, supra; Green v. United States (C. C. A. 8) 57 F.(2d) 9. However, he does say that he has been unable to withstand any

physical or mental strain since 1920; that in his opinion his condition is due to nervousness resulting from gas, influenza, and exposure. His statements are supported by the fact that he worked at many different places and occupations and lost much time due to illness, and by the testimony of medical and lay witnesses.

The test is whether Fitzpatrick, on May 31, 1919, had a disability which rendered it impossible for him to follow continuously any substantially gainful occupation, founded upon conditions which indicated with reasonable certainty that such impairment would continue throughout his life. United States v. Peet (C. C. A. 10) 59 F.(2d) 728, 729; Hirt v. United States (C. C. A. 10) 56 F.(2d) 80.

The government contends that proof of his employment negatived the existence of total disability.

"Continuously," as used in the regulations, does not denote absolute continuity. It means working with reasonable regularity and work does not cease to be continuous because of interruptions in one's occupation due to mere periods of temporary illness, such as are incident to people of normal health. United States v. Peet, supra; Ford v. United States (C. C. A. 1) 44 F.(2d) 754.

Employment may be of such duration and of such a nature that it conclusively refutes any idea that the insured might have been permanently and totally disabled prior to and during the employment. Storey v. United States (C. C. A. 10) 60 F.(2d) 484; Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170, and cases therein cited.

On the other hand, an insured, who is able to work only spasmodically, with frequent interruptions or change of employment made necessary by his physical or mental condition, cannot be said to be able to work with substantial continuity. Storey v. United States, supra; United States v. Tyrakowski (C. C. A. 7) 50 F.(2d) 766; United States v. Phillips (C. C. A. 8) 44 F.(2d) 689.

Fitzpatrick's employment indicated a disability rather than ability to work with substantial continuity.

On this record we cannot say that there is no substantial evidence to show that Fitzpatrick was so disabled on or prior to the date his policy of insurance would have lapsed that he could not follow continuously any substantially gainful occupation.

Affirmed.