## UNITED STATES v. THOMAS et al.

### No. 744.

Circuit Court of Appeals, Tenth Circuit.

March 28, 1933.

Edgar C. Jensen, Asst. U. S. Atty., of Salt Lake City, Utah (C. R. Hollingsworth, U. S. Atty., of Salt Lake City, Utah, and R. A. Toomey, Chief Atty., Veterans' Administration, of Denver, Colo., on the brief), for the United States.

R. W. Katerndahl and Joseph G. Jeppson, both of Salt Lake City, Utah, and Jess Hawley, Oscar W. Worthwine, and Hawley & Worthwine, all of Boise, Idaho, for appellees.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

At the close of all the evidence in this action on a war risk insurance policy, the government requested the trial court to direct a verdict on the ground that the evidence failed to disclose total and permanent disability while the policy was in force. The request was denied; the jury, properly charged as to the law, found for the plaintiff; this appeal challenges the correctness of the ruling on the request for a directed verdict. The question presented is as to the extent and permanence of the disability of the insured at the time of his discharge from service, no premiums being thereafter paid.

When the insured went to France in November, 1917, he was a rugged, robust, athletic young man. Detailed to duty on the docks at Brest, he was constantly exposed to the rain and fog which is traditionally associated with that seaport. The weather was so soggy that his clothes would not dry out during the night. In the spring of 1918, he became afflicted with a hacking cough which stayed with him until his death; his erect posture became stooped; his robustness gave way to emaciation; energy was displaced by lassitude; he could no longer box or wrestle or play basketball; his legs and feet were red and swollen and sore. After 19 months of this exposure, he was discharged on June 23, 1919. Upon his discharge, he signed the usual statement presented to him for signature by his officers, certifying to his good health. One of his comrades testified to the circumstances attendant upon this certificate as follows:

"I was in the same line that Burke Thomas was discharged in. They gave us only a cursory examination. We were not stripped. Both Burke and I signed any papers they put in front of us, neither of us reading them. We were anxious to get out of the army."

The desire to get out of the army was doubtless strong in one who had served for 19 months on the docks at Brest; and the circumstances under which the insured signed this certificate were for the jury to consider in determining its evidentiary weight.

Upon his discharge, his step was halting; walking four blocks left him exhausted; he had no appetite, and was irritable and nervous; he had severe headaches; his hands shook and his fingers were swollen; his feet pained him; when he would sit down, his joints would stiffen; his sleep was restless and broken; he coughed up thick and yellowish sputum, streaked with blood; he could not do a full day's work without sheer exhaus-

tion; and night sweats were a common occurrence.

He taught school for about four years, but was compelled to hire a substitute on the average of twice a month, and his wife also substituted for him an appreciable part of the time. His condition became gradually worse, and in November, 1924, his teaching contract was cancelled because of his physical incapacity. From then on until his death in 1928, he was in government hospitals. He did some work for a Building & Loan Association, took some vocational training, and worked for awhile as timekeeper in a mine, but did not hold any of these positions with substantial continuity.

Doctor Colton diagnosed his case in July, 1919, as arthritis and chronic throat condition; in 1922 there was a definite chest pathology,—a retraction of the apices with diminished resonance on percussion, changed breath sounds, and other evidences which convinced the physician he was afflicted with tuberculosis which bordered between moderately and far advanced, and that he was probably afflicted with the disease in 1919. In 1924 Doctor Merrill found an œdema and nephritis, which did not respond to treatment; in his opinion, the insured was then totally and permanently disabled. In 1925 there was a definite diagnosis of far advanced pulmonary tuberculosis, including rales, positive sputum, bilateral cavitation, fibrosis of all lobes, and conglomerate lesions. By 1928, he was entirely helpless, was fed through a tube, and was blind. He died that year.

Doctors Clawson and Anderson testified, in answer to hypothetical questions, that in their opinion the insured was totally and permanently disabled when discharged from the army; Doctor Anderson's opinion was that his resistance was so lowered by his long-continued exposure and the complication of diseases with which he was afflicted, that his condition was a hopeless one at that time, no matter what care he received.

■ It has been held, by this and other courts, that the plaintiff must establish, by substantial proof, that the insured was totally and permanently disabled while the policy was in force; that proof of minimal or incipient tuberculosis during that period, without more, is not sufficient to carry the case to the jury. It has likewise been held that the subsequent employment of the insured may be of such a nature and duration as to refute conclusively any claim of such disability. Nicolay v. United States (C. C. A.

10) 51 F.(2d) 170; Hirt v. United States (C. C. A. 10) 56 F.(2d) 80; Roberts v. United States (C. C. A. 10) 57 F.(2d) 514; United States v. Rentfrow (C. C. A. 10) 60 F.(2d) 488; Storey v. United States (C. C. A. 10) 60 F.(2d) 484; United States v. Fitzpatrick (C. C. A. 10) 62 F.(2d) 562; United States v. Peet (C. C. A. 10) 59 F.(2d) 728; Eggen v. United States (C. C. A. 8) 58 F.(2d) 616; United States v. Diehl (C. C. A. 4) 62 F.(2d) 343; United States v. Harth (C. C. A. 8) 61 F.(2d) 541. We adhere to the doctrine of these cases; the government contends that such adherence requires a reversal of the present case.

Counsel for appellees have brought to our attention valuable excerpts from the Report on Tuberculosis made in 1932 by Dr. Arthur Salusbury MacNulty, Senior Medical Officer for Tuberculosis of the Ministry of Health of London; and from the recent work of Dr. Maurice Fishberg, Chief of the Tuberculosis Service, Montefiore Hospital, on Pulmonary Tuberculosis. From these, it appears, that the effect of tubercle bacilli varies widely with the individual infected therewith, and that it is impossible to make a definite prognosis at the outset of the disease. It follows, therefore, that while we are concerned only with the condition of the insured when his policy lapsed, subsequent events are of vital import in determining his then condition.

■ Taking into view the entire history of the insured in this case, we find much more than the ordinary case of minimal or incipient tuberculosis. We find a man whose entire system had been shattered, and his resistance lowered, by months of unremitting exposure to the elements in a forbidding climate; we know now that the disease had, in all probability, passed the minimal stage, even then; moreover there were serious complications in the way of arthritis, nephritis, and the accompanying œdema,—swelling of the extremities. We know that although he abstained largely from physical activities, he could not even teach school without constant interruptions on account of his physical condition. Despite the care which he took of himself, and despite treatment by capable physicians, he grew gradually worse. We cannot say, in the face of this record, that there is no substantial evidence of the permanence and totality of his disability in 1919.

■ Nor is the work record such as to refute conclusively the fact found by the jury. It is true that the insured, under the stimulus of a never-say-die spirit backed by a strong will power, taught school for several terms

under a physical stress that would have caused most men to quit. But even then, he was compelled to hire a substitute once or twice a month, and have his wife take over his classes at other times. He was not able to and did not work with reasonable regularity, subject only to ordinary interruptions; he was "able to work only spasmodically, with frequent interruptions * * * made necessary by his physical condition." United States v. Fitzpatrick (C. C. A. 10) 62 F.(2d) 562, 564. The evidence of his stubborn effort to carry on in the face of his afflictions tends to corroborate, rather than contradict, his claim of disability. Storey v. United States (C. C. A. 10) 60 F.(2d) 484.

The judgment is affirmed.