**UNITED STATES v. PEARSON.**

**No. 798.**

Circuit Court of Appeals, Tenth Circuit.

June 21, 1933.

John E. Haltigan, Atty., Veterans' Administration, of Wichita, Kan. (John M. Goldesberry, U. S. Atty., and A. E. Williams, Asst. U. S. Atty., both of Tulsa, Okl., and Davis G. Arnold and Lawrence A. Lawlor, Attys., Veterans' Administration, both of Washington, D. C., on the brief), for the United States.

C. Brooks Holtzendorff, of Claremore, Okl. (Preston W. Holtzendorff, of Claremore, Okl.; on the brief), for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and POLLOCK, District Judge.

PHILLIPS, Circuit Judge.

Pearson brought this action against the United States to recover on a policy of war risk insurance. Trial by jury was waived and the action tried to the court. At the close of all the evidence, counsel for the government moved for judgment in its favor on the ground that the evidence failed to establish that Pearson became permanently and totally disabled before the policy of insurance lapsed. The motion was overruled and judgment was entered for Pearson.

The burden was upon Pearson to establish by substantial evidence that he became totally and permanently disabled while the policy was in force [United States v. Thomas (C. C. A. 10) 64 F.(2d) 245; United States v. Ivey (C. C. A. 10) 64 F.(2d) 653; United States v. Rentfrow (C. C. A. 10) 60 F.(2d) 488; Roberts v. United States (C. C. A. 10) 57 F.(2d) 514; Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170], and the overruling of the motion for judgment raises the question whether Pearson sustained that burden.

Pearson served in the Army from August 22, 1917, until his discharge on February 20, 1919. During that time he was granted a $10,000 policy of insurance. While in the service, he was gassed and sent to a base hospital, where he remained three or four months. After his release from the hospital, he was sent to a rest camp and later returned to the United States as a casual. He had lost considerable weight and at the time of his discharge was thin, raised blood, was very nervous, and suffered from a kidney ailment and rheumatism. He worked for his father on a farm, but was able to work only a few days at a time. In 1920 he moved to a farm of his own. From 1922 to 1928 he lived on a farm, but did scarcely any of the work. In 1928 he went to Colorado for his health, upon advice of his physician. In 1929 and

1930 he worked as an oiler on gas engines in Kansas. Such work was light and required very little exertion by Pearson.

Immediately after Pearson's discharge from the Army, he was treated by Dr. Stemmons for nervousness. In 1920 Dr. Stemmons made a physical examination of Pearson in connection with his application for a life insurance policy, and submitted a favorable report to the company. Pearson's answers to the questions in the application were to the effect that he was and had always been in good health, and was not suffering from any disease. Dr. Stemmons examined Pearson again in 1922 and attended him from then on until 1929. The doctor testified that Pearson was nervous in February, 1919, and in the fall of that year he had an irregular heart; that in 1920 he appeared to be in good health; that in 1922 he had a nervous affection; and that he now has arterio-sclerosis. He also testified that Pearson was suffering from the same ailments in 1921 and 1922 as he had in 1919, and that such physical impairment was permanent and incurable.

Pearson fainted in February, 1923, and Dr. Malloy was called. Dr. Malloy testified that Pearson's heart action was rapid, there were rales in his lungs, and a twitching of the eyelids. Another examination made a short time before the trial disclosed a noticeable tremor of the upper extremities, reflexes diminished, poor equilibrium, rales in lungs, and rapid heart action. He concluded that Pearson was suffering from multiple sclerosis, which means a multiplicity of hardened areas throughout the spinal cord and sometimes the brain. He testified also that the disease comes on slowly, and that there might be remissions; that it is progressive and may last a few years or many years, is incurable and usually results in death; that a person might do some work during the remission periods, but could not carry on a substantially gainful occupation when so afflicted.

In considering Pearson's case-history, we find a man whose constitution was shattered by his war experience; who upon his discharge was suffering from a nervous affliction attended with other complications; that such condition, despite care and treatment, has slowly become more aggravated, and can now be definitely diagnosed as multiple sclerosis. In the face of this record, we cannot say that there is no substantial evidence of a total and permanent disability at the time of discharge.

The work record of Pearson does not refute the finding of the trial court. He was not able to work and did not work with reasonable regularity. On the contrary, he worked only spasmodically, with frequent interruptions made necessary by his physical condition. This in no wise refutes a finding of total and permanent disability. United States v. Thomas (C. C. A. 10) 64 F.(2d) 245; United States v. Fitzgerald (C. C. A. 10) 62 F.(2d) 562. Nor would a change of occupation, in view of the nature of affliction, have permitted him to carry on a substantially gainful occupation.

Affirmed.