## UNITED STATES v. THOMSON.
### No. 973.

Circuit Court of Appeals, Tenth Circuit.
June 18, 1934.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (Wm. J. Barker, U. S. Atty., of Santa Fé, N. M., and A. Gilberto Espinosa, Asst. U. S. Atty., of Albuquerque, N. M., on the brief), for the United States.

Joseph L. Dailey, of Albuquerque, N. M. (Pearce C. Rodey and Don L. Dickason, both of Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is a suit to recover upon a war risk insurance contract. A jury was waived. The court found that the insured became totally and permanently disabled on June 1, 1920, while the policy was in force and effect. Judgment was rendered in his favor, and this appeal followed.

The finding of total and permanent disability is challenged. We are told that it is not supported by substantial evidence. Under the often-repeated rule, the burden rested upon the insured to show by substantial evidence that he became so disabled while the policy was in force. United States v. Thomas (C. C. A.) 64 F.(2d) 245; United States v. Ivey (C. C. A.) 64 F.(2d) 653; United States v. Pearson (C. C. A.) 65 F.(2d) 996; Thorne v. United States (C. C. A.) 66 F.(2d) 230; United States v. Harrell (C. C. A.) 66 F.(2d) 231; United States v. Derrick (C. C. A.) 70 F.(2d) 162.

Premiums were paid to May 31, 1920. The grace period of thirty days continued the contract in force throughout June of that year. If, therefore, insured became totally and permanently disabled on June 1st, as found by the court, the judgment was right. We review the record to ascertain whether it discloses substantial evidence to support that finding. Insured testified that he was strong and weighed about 180 pounds before entering the service, and that he weighed only 155 pounds when discharged; that he served overseas, his duties being to transport wounded soldiers from first aid stations at the front to field hospitals; that he was in five different offensives; that he was gassed several times, the worst being at Verdun; that he was continuously in gassed areas on the road at night; that he did not enter the hospital for treatment, but received treatment from

time to time as he took wounded soldiers to the hospital; that immediately after being discharged, he consulted Doctor Noble in Indianapolis, Ind., and was advised to leave and take a rest; that he did so, resting three months; that he then began work for Hunter Dry Kiln Company of Indianapolis, and terminated that employment about two years later; that his duties were to supervise the erection of dry kilns; that the work was light, and not constant; that he was not able to work continuously; that he quit once during that time and was in bed three months; and was off duty at various other times on account of his physical condition; that he frequently failed to go to the office for two weeks at a time; that while employed he ran temperature, particularly in the afternoon and evening; that immediately after terminating that employment, he went to Florida and was in bed several weeks; that he then worked for the Miami Herald about six weeks and was taken sick again; that after remaining in a hospital there a while he went to New Mexico for his health and has remained there for that purpose. Oren M. Ragsdale, a fellow employee of Hunter Dry Kiln Company, corroborated the testimony with respect to the kind and character of work the insured did for that company, and that it was frequently interrupted on account of his physical condition; that he was run down and in poor health, and that his connection with the company terminated on account of ill health.

Doctor Noble, a qualified and practicing physician at Indianapolis, testified that he had known the insured since he was a boy; that he was in good health prior to enlisting in the army; that when he returned he was 30 or 40 pounds underweight; that the witness examined the insured in June, 1919 (soon after his return from service and before payment of premium ceased); that he was nervous, with marked tremor and pulse slightly accelerated; that he had afternoon temperature, coughed, and was quite emaciated; that his stomach was inactive, but his chest was full of signs of tuberculosis. Predicated upon the examination and from study of clinical progress of the condition, he said that in his opinion the insured had active pulmonary tuberculosis and was totally and permanently disabled at the time the examination was made. Doctor Stalker, another practicing physician in Indianapolis, testified that he examined the insured in 1919 or 1920; that he used a stethoscope, but did not make a sputum test; that he diagnosed the case as one of active tuberculosis, and that insured was totally and permanently disabled at that

time. Doctor Gekler, a specialist in tuberculosis at Albuquerque, N. M., testified that he examined the insured in the spring of 1922 (obviously very soon after his arrival there); that he found active tuberculosis involving between one-half and two-thirds of each lung, sputum positive; that insured immediately entered a sanatorium and remained there a year or thereabout; that he ran temperature, had moisture, pulse accelerated, and was kept on a strict bed routine; that at the time of the first examination, he was totally and permanently disabled; that it was impossible to tell from that examination how long the condition had previously existed; that in view of the insured's condition at that time, he would accept without question the finding of a reputable physician stating that he had active tuberculosis in 1919 and 1920.

No testimony was offered by defendant. The existence of these facts is unassailed. Their sufficiency to establish total and permanent disability is challenged. We are unable to say that the testimony thus reviewed is insufficient to sustain the finding. It will be observed that the employment in question was spasmodic. Although the work was light in character, it was punctuated with interruptions caused by physical disability. The insured was in bed for three months at one time, and he was forced to lay off at frequent intervals. He was thin, emaciated, and underweight throughout the period. Immediately after terminating that service—in consequence of poor health—he was in bed again for several weeks. The testimony of two physicians, not rebutted by other testimony or physical facts, concurs to the effect that he was totally and permanently disabled in 1919, and the work record does not overthrow that testimony because one may work spasmodically, with frequent interruptions, necessitated by physical disability, and still be unable to follow continuously a reasonably gainful occupation. It is not necessary that he be bedfast in order to constitute total and permanent disability within the purview of a war risk insurance contract. Nicolay v. United States (C. C. A.) 51 F.(2d) 170; United States v. Rye (C. C. A.) 70 F.(2d) 150.

The remaining question is whether the suit was instituted too late. The complaint was filed on September 28, 1932. A motion was lodged to dismiss it because the cause of action was barred by the statute. The record fails to indicate what disposition was made of the motion. An amended complaint was filed on December 10, 1932, in which it was alleged that the claim was filed with the Vet-

erans' Bureau "on or about June 27th, 1931," that it was rejected by letter dated September 19, 1932, and that such letter was received in due course of mail on September 22, 1932. No motion to dismiss was directed against that pleading. The parties stipulated early in the trial that a disagreement existed and that the suit was filed within the statutory period thereby narrowing the controverted issues to that of disability. Accordingly, no proof was offered concerning the date on which the claim was filed or rejected. No reference was made to the question now urged in defendant's motion for findings of fact and conclusions of law, in the single assignment of error filed or in its original brief. It was raised at the oral argument as an eleventh-hour effort to rescue the case. A suit of this kind must be filed within six years after the right of action accrued or within one year after July 3, 1930, whichever is the later date, and the period during which the claim is pending must be excluded in computing that time because its pendency suspends the operation of the statute. 38 USCA § 445. Since the insured contends and the court found that he became totally and permanently disabled in 1920, the latter provision of the statute applies. If the claim was filed on June 27, 1931, only six days remained until it became barred and the suit must have been filed within six days after its rejection because the statute resumed on that date. Roberts v. United States (C. C. A.) 66 F.(2d) 273; United States v. Gower (C. C. A.) 71 F.(2d) 366; Stallman v. United States (C. C. A.) 67 F.(2d) 675. So, assuming those dates to be correct, the suit must have been filed on or before September 25th. It was instituted three days thereafter. Whether it came within the required period was a question of fact and depended upon the respective dates on which the claim was filed and rejected. It may have been filed a few days before the 27th, or perchance the 27th of May instead of June. As stated, the date was alleged to be "on or about June 27th," and no proof was offered relating to the matter. That was rendered unnecessary because the parties agreed in open court that a disagreement existed and that the suit was filed within the required time. We must assume that the parties knew the facts, and, having ascertained that the suit was instituted within the plainly specified time, intelligently entered into the stipulation rendering the introduction of proof unnecessary. Since the question was merely one of fact and the parties stipulated with respect to it, they have waived it and are bound.

United States v. Kiles (C. C. A.) 70 F.(2d) 880. In view of the indefiniteness mentioned, we cannot go behind the stipulation and upon speculation or surmise hold that the claim was filed on the exact date, June 27th, not three days or more prior thereto.

The judgment is affirmed.