## UNITED STATES v. FLIPPENCE.

### No. 983.

Circuit Court of Appeals, Tenth Circuit.

Aug. 15, 1934.

Edgar C. Jensen, Asst. U. S. Atty., of Salt Lake City, Utah, and J. Gregory Bruce, of Washington, D. C., Atty., Department of Justice (Dan B. Shields, U. S. Atty., and John S. Boyden, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for the United States.

Oscar W. Worthwine, of Boise, Idaho (Joseph G. Jeppson, of Salt Lake City, Utah, and Jess Hawley, of Boise, Idaho, on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

A jury, fairly instructed, found appellee became totally and permanently disabled on or before May 31, 1919. The only error argued is that a verdict should have been directed for appellant. Under the well-settled rule of the common law, our inquiry is whether, assuming the truthfulness of testimony adduced by appellee, there is substantial evidence of such total and permanent disability during the life of the policy. We cannot review the facts as on an equity appeal, for Congress has provided for the trial of these cases at law, and the Seventh Amendment to the Constitution prohibits our re-examination of any fact tried to a jury, otherwise than according to the rule of the common law. The trial court has the power to set aside an unjust verdict that is contrary to the overwhelming weight of the evidence, even if founded upon evidence sufficient in

612

law to support it, Prinsen v. Travelers' Protective Ass'n (C. C. A. 10) 65 F.(2d) 841, but its action in denying a motion for new trial is not reviewable in the absence of a clear abuse of that discretionary power, Kansas City Southern Ry. Co. v. Littlefield (C. C. A. 10) 37 F.(2d) 707; Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp. (C. C. A. 10) 49 F.(2d) 146; Shannon v. Shaffer Oil & Refining Co. (C. C. A. 10) 51 F. (2d) 878, 78 A. L. R. 851. We examine the record, then, to see if appellee made a case for the jury; and if so, whether his work record belies it.

The disease with which appellee is concededly now afflicted is Parkinsonian syndrome, following encephalitis. Such diagnosis was made by the Veterans' Bureau in 1925, and total and permanent disability since 1926 is admitted. Encephalitis has been described by Doctor Barker [1] as "one of the most terrible maladies by which the structures and functions of the central nervous system may become involved." While it frequently follows influenza, it is "an independent, acute, infective disease, the simultaneous appearance of which with influenza is to be explained in the same way as the frequent association of measles and whooping cough." [2] It is an inflammation of the brain, and in the earlier stages is difficult of diagnosis. As the disease progresses, an aggregation of characteristic symptoms appear, which are known as Parkinsonian syndrome. Strümpell & Seyfarth say of these symptoms, that "The slowness and impairment of movements, the mask-like rigidity of the face, and the bent position of the body persist for years, with continually increasing exacerbations and only transient improvements. Dribbling of saliva, increased sebaceous secretion on the face, and sometimes indistinctness of speech and micrographia, complete the picture of post-encephalitic Parkinsonism." [3] Doctor Barker mentions, in addition, preternatural drowsiness, muscular twitchings, lassitude, and lack of endurance, a motor restlessness and an unmotivated depression.[1] Doctor Friedman describes them as "rigidity of expression, a fixed stare with facial weakness * * * salivary drooling * * * speech dysarthric (difficulty in articulation)." [4] The medical evidence in this record is that when these symptoms become pronounced, there is a partial destruction of motor nerve areas, and the disease has reached the incurable stage; that rest is the indicated treatment, and that work of any kind aggravates the condition.

The definite diagnosis of Parkinsonian syndrome, post-encephalitis, made by the Veterans' Bureau in 1925, leaves little doubt that he was afflicted with the disease from the time the first definite symptoms were observed. The delay in the diagnosis may have been occasioned, as Doctor Barker suggests, because little was known of the disease until the last decade. The question narrows, then, to the point of whether he was suffering from this incurable malady while the policy was in force, as in United States v. Eliasson (C. C. A. 9) 20 F.(2d) 821, and United States v. Lesher (C. C. A. 9) 59 F.(2d) 53, or whether, as in United States v. McLaughlin (C. C. A. 8) 53 F.(2d) 450, he contracted it thereafter. Upon this point, appellee produced this testimony:

When he enlisted, appellee was a strong, healthy young farm hand with a fourth grade education. During his service in France, he was hospitalized with measles and an adenoidectomy performed; thereafter he became slow of action and his eyes had a vacant look. Upon discharge from the Army he walked slowly, dragging his feet, was inclined to stumble, was starey-eyed, morose and excitable; his voice was changed, his speech thick, his throat bothered him, his arms were rigid and trembled, he slept on the lawn in the daytime, and drooled. His speech was disconnected. These symptoms continued, growing worse, from the time of discharge.

This is a clinical picture of the incurable and totally disabling malady. There is, in addition, expert opinion evidence that from the onset of the disease, the insured was totally and permanently disabled.

Appellant's evidence persuades us that appellee's witnesses are mistaken as to dates. Without detailing all of this evidence, we find a number of neighbors, including a bishop of the church, observing no change in appellee's condition until long after the policy lapsed; he underwent two searching physical examinations in 1922 and 1923 which should have detected the disease if the symptoms were as pronounced as appellee's witnesses describe them. Some of appellee's witnesses had made affidavits, which they say they did not

---

[1] U. S. Vet. Bureau Med. Bulletin, October, 1929, p. 730.

[2] Strümpell-Seyfarth, Prac. of Med. vol. 1, p. 225.

[3] Strümpell-Seyfarth, Prac. of Med. vol. 1, p. 229.

[4] Nelson's Loose-Leaf Living Med. vol. 6, p. 3246.

read, placing the beginning of his trouble long after his policy lapsed. The testimony of appellee's witnesses, while strongly contradicted, is not inherently improbable, and the verdict of the jury settles the matter; while we think the jury erred, we are powerless to correct the error.

■ Is appellee's work record of such nature and duration as conclusively to refute the claim of total and permanent disability prior to and during that employment? If so, he may not recover. Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492; Nicolay v. United States (C. C. A. 10) 51 F. (2d) 170; Roberts v. United States (C. C. A. 10) 57 F.(2d) 514; United States v. Peet (C. C. A. 10) 59 F.(2d) 728; United States v. Thomas (C. C. A. 10) 64 F.(2d) 245; United States v. Ingalls (C. C. A. 10) 67 F. (2d) 593. On the other hand, it is settled by high authority, that if one, unable to work in the sense that he is afflicted with a disease where rest is indicated, nevertheless works "when really unable and at the risk of endangering his health or life," such work does not bar recovery if the proof shows the insured to be otherwise entitled to recover. Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492. See, also, Storey v. United States (C. C. A. 10) 60 F.(2d) 484; United States v. Fitzpatrick (C. C. A. 10) 62 F.(2d) 562; United States v. Thomas (C. C. A. 10) 64 F.(2d) 245; United States v. Pearson (C. C. A. 10) 65 F.(2d) 996; United States v. Brown (C. C. A. 10) 72 F.(2d) 608 (decided August 13, 1934). If, during the life of his policy, an insured is afflicted with a disease which may be cured by a period of rest, but if, instead of following that course, he works until the disease reaches the incurable stage after his policy lapses, he cannot recover; not, however, because barred by his work record, but because at the time his policy lapsed his disease was curable and his disability temporary. On the other hand, if, as here, the malady is incurable before lapse, and if it is of a nature where complete rest is necessary to prolong life, then work done thereafter endangers his life and does not necessarily bar recovery. With these principles in mind, we examine the proof here.

In the summer of 1919 he operated an 85-acre farm for a third of the crop, which paid him five or six hundred dollars. His work was satisfactory that summer, although not as good as before the war. The next summer he worked as a hand for several farmers, but he was slow and kept up with difficulty, lying down in the fields occasionally. From then until 1923 he did odd jobs, but his work was increasingly and progressively unsatisfactory. From June, 1923, to March, 1925, he worked steadily for a Copper Company, most of the time as an oiler, which required him to make two rounds, of an hour and a half each, in an eight hour shift. Between rounds he would sleep. He earned $2,554.34 during this period.

This is a substantial work record, and would furnish strong support for a verdict against appellee. But is it such as to deny appellee's right to recover as a matter of law? It cannot be said that the nature of the work done, in the manner it was done, is necessarily irreconcilable with the existence of the disease with which he was afflicted, as would be the case if he claimed total disability on account of the loss of an arm. Nor was it of such duration as conclusively to refute any claim of disability. The medical testimony is that such work aggravated his condition. As an original proposition, there is much to be said on the point that one should not be permitted to say he was totally disabled during two years in which he held a steady job. But, in obedience to the settled policy of construing the statutes and policies liberally in favor of the veteran, courts have permitted judgments to stand in the face of work records more formidable than this, and some of such cases have received the tacit approval of the Supreme Court in the Lumbra Case. While, in a sense, each case must rest on its own bottom, it is desirable that the same general rules be applied to all veterans, and in the light of the adjudicated cases, we cannot say that recovery for the disability here established is barred, as a matter of law, by the work done after lapse.

Appellant directs our attention to the wholesome statement in the Lumbra Case that long delay in filing suit is, in the absence of a clear and satisfactory explanation, strong evidence against the claim of disability. If a suit is brought within the period of limitation fixed by Congress, delay does not bar recovery as a matter of law. It is, as the Supreme Court says, evidence on the issue of fact, and it would be entirely appropriate to so charge a jury. Such delay may be weighed in the balance, with all other evidence, in passing upon the legal question of whether a case has been made for the jury. It has less weight in a case where a veteran of meager education is afflicted with an incurable brain disease, than it would in a case where it appears that a veteran was conscious of his rights during the period of delay.

Entertaining grave doubts as to the fact of this disease having reached the incurable stage before lapse of the policy, we affirm the judgment reluctantly. But we cannot assume the responsibility of weighing the evidence in these actions at law. That is the province of the jury.

The judgment is, accordingly, affirmed.