### HARPER v. UNITED STATES.
### No. 1651.

Circuit Court of Appeals, Tenth Circuit.

Sept. 1, 1938.

Frank C. Wade, of Terre Haute, Ind. (H. F. Hudson, of Wichita, Kan., on the brief), for appellant.

Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C. (Summerfield S. Alexander, U. S. Atty., and R. T. McCluggage, Asst. U. S. Atty., both of Topeka, Kan., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., and Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C., on the brief), for the United States.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

This action instituted by the plaintiff (appellant) to recover for total permanent disability benefits under policy of war risk term insurance issued to plaintiff during wartime service as nurse, allegation was that the said policy was kept in force for a time not definitely known to plaintiff by reason of acts of premium payment and of uncollected compensation due plaintiff when her policy otherwise lapsed for non-payment of premiums, and insurance protection was continued until December 1, 1931.

Plaintiff was a Reserve Army Nurse in service of the United States from May 18, 1918, to January 9, 1919, when she was honorably discharged. On May 24, 1918, a policy of war risk insurance was issued in her favor in the amount of $10,000. No premiums being paid on such policy after her discharge, it afforded protection by reason of such actual payments, including grace period, until March 1, 1919. On August 21, 1920, she was awarded $20 per month from January 10, 1919, as compensation, keeping the policy in force until October 1, 1920.

Evidence of plaintiff was that when she entered the service, she was assigned to duty in a negro pneumonia ward where she remained in such capacity for three or four months, and in service, contracted influenza during an epidemic, following which she had intestinal trouble, and became much run down, developing a cough, becoming so weak that it was necessary to have assistance of another nurse. At time of her discharge, neither did she claim any disability nor contemporaneous examination disclose such. She testified she felt fairly well part of the time, her cough bothering her.

She further testified that on being discharged she returned to her home in Hutchinson, Kansas, not engaging in any work for a period of about three weeks, and then did nursing for about three months, not working very much on account of not being able to do so, and further that in later part of May, 1919, she attended some classes in hygiene and care of sick, which lasted a week, and that shortly thereafter she had other classes lasting about six weeks, during which time she ran a temperature, and becoming tired, finally quit, exhausted and

worn out. From June to September, 1919, she remained at home to take care of herself. In September, 1919, she took other classes, giving them up in about six weeks on account of her health.

Her evidence was further as follows: Going to Crossett, Arkansas, she was married, remaining from November until May, 1920, during which time she tried classwork again, but on account of health, relinquished this work, not being able to go on with it. She and her husband then went to Hot Springs, Arkansas, remaining there about a month, where she consulted a government physician on account of sore throat, who sent her to a government hospital in Houston, Texas, where she was examined for stomach, gall bladder, lung and throat trouble, remaining there three weeks, running a temperature. She then returned to Hutchinson, Kansas, where her physician placed her in St. Elizabeth's Hospital for three weeks, taking treatments for the gall bladder trouble. From there she went to a government hospital in St. Louis, remaining four months. She then went to Columbia, Missouri, and later to Wichita, Kansas, where a Dr. Bowman placed her in the Wesley Hospital for two months, to take treatments for gastric trouble. From there she went to a government hospital at Oteen, North Carolina, where she remained for eight or nine months, taking rest cure for tuberculosis. She then returned to Hutchinson, Kansas, and shortly thereafter had a gall bladder operation in a government hospital at Kansas City. From there she went to Asheville, North Carolina, a few weeks later entering a private hospital, where she remained about two weeks, receiving treatments for abdominal, stomach and gall bladder trouble.

After leaving the hospital, she was in bed at home part of the time for about six months, on account of her lungs. In 1924 she went to her mother's where she remained until 1925. In 1924, feeling better, she and a friend opened a small tearoom, which they operated for about three or four months, she working three or four hours a day in the tearoom, and resting the balance of the time. Quitting the tearoom, she went to a government hospital at Fort Lyons, Colorado, in the fall of 1925, where she remained until May, 1926, taking treatment for tuberculosis. Then she was transferred to California, and there was treated for tuberculosis for about a year. She has lived in Wichita, Kansas, since 1927, except

for a period of about five or six months in 1930 when she was in Fitzsimons Hospital taking treatments for tuberculosis. She has not been hospitalized since the fall of 1931, but has lived at home and led a quiet life, getting up late in the morning, taking an hour's rest in the afternoon, doing very little work, and going to bed early at night.

Dr. Louise Richmond, a physician at Hutchinson, Kansas, testified that she had known plaintiff about 22 years and saw her almost immediately upon her return from the Army nurse service; that she observed the plaintiff was fatigued most of the time and her voice was husky, with a cough; that she associated with plaintiff on several charity cases and noticed that the plaintiff became exhausted; that shortly after plaintiff's return from the Army, Doctor Pottenger of Monrovia, California, a recognized authority on tuberculosis, was a guest speaker before the Medical Society at Wichita, Kansas, and she assisted him in making an examination of plaintiff. Plaintiff was stripped to the waist, a thorough examination of her chest being made by Dr. Pottenger; that he asked her to follow him and see if she could find with her fingers what he did with his, and on palpitating plaintiff's chest she found the usual rigidity of muscles in tubercular cases and the chest demonstrated a hilus infection that was quite marked, and she concluded that there was a latent hilus infection in plaintiff, which is a chronic condition which it takes a long time to develop. She further testified that the medical profession terms a hilus infection as a latent type that might lie dormant for a while and then there would be some external cause that would produce action, then it might be quiescent again. She testified that Dr. Pottenger told plaintiff that she had a hilus infection and with proper care she might live to be "a nice old lady," but she would have to take excellent care of herself.

Dr. Olson testified that he first examined plaintiff in June, 1925, making a diagnosis of active pulmonary tuberculosis, moderately advanced; that he examined her several times, and last examined her on September 25, 1936, each examination disclosing active tuberculosis. He also testified that he found a slight gall bladder trouble in 1925, which was intermittent, and a mild cholecystitis, but did not recommend any treatment for it as he did not think it necessary.

Plaintiff (appellant) introduced in evidence findings and diagnosis of medical examinations made by the Veterans Bureau physicians, the first of which is dated May 29, 1920, and the last September 23, 1936.

An examination of May 29, 1920, discloses that plaintiff was suffering with cholecystitis, prognosis favorable, and laryngitis, with a statement that she was unable to resume her pre-war occupation. Examination of November 29, 1920, discloses pharnygitis, chronic, (per tubercular), cholecystitis, with prognosis good. The record of the examination of February 5, 1921, has a note which reads as follows: "Says claimant not able to resume prewar occupation. Claimant refuses to be transferred to government owned hospital and has left St. Elizabeth's Hospital on her own responsibility."

Record of the examination of March 1, 1922, contains the following: "Tuberculosis, pulmonary, chronic, inactive." Record of examination of May 17, 1923, contains the following note: "Says claimant is able to resume prewar occupation." Record of examination of June 23, 1923, contains the following: "Under observation for pulmonary tuberculosis, none found." Record of examination of September 4, 1923, contains the following: "Says claimant able to resume prewar occupation in one month, no T. B. found." Record of examination of April 8, 1927, discloses the following: "Tbc. pul. chr. mod. adv. arrested." Record of examination of May 24, 1927, contains the following: "Tbc. pul. chr. mod. adv. arrested." Record of examination of December 21, 1927, contains the following: "Pul. T. B. Chr. mod. adv. arrested." Record of examinations made at Fitzsimons General Hospital from August 16, 1929, to March 5, 1930, discloses "Tuberculosis, pulmonary, chronic, arrested, upper lobe, right lung." Record of examinations made from July 21, 1930, to October 10, 1930, at Fitzsimons Hospital discloses "Tuberculosis, pulmonary, chronic, arrested, upper lobe, right lung." Examination of December 19, 1931, discloses "T. B. pul. chr. min. arrested, stationary." Examination of February 28, 1935, discloses "Tuberculosis, pul. chr. mod. adv. apparently arrested." Examination of September 23, 1936, discloses "Tuberculosis, pul. chronic, mod. adv. arrested."

Dr. C. E. Bates, a witness for the government, testified that he examined plaintiff between September 23 and September 28, 1936, and his examination showed tuberculosis, pulmonary, chronic, moderately advanced, arrested, and pleurisy, chronic, from the

X-Ray standpoint; that he had an X-Ray of plaintiff's chest and made a routine physical examination and found the tuberculosis arrested.

On September 28, 1936, at beginning of trial it was stipulated: "The parties to this action hereby waive the intervention of a jury, and agree that this action may be tried by the Court."

In Bill of Exceptions it is recited:

"Now comes the defendant (appellee) in the above entitled cause, at the close of all of the evidence, and respectfully moves the Court to direct a verdict in its favor on the ground and for the reason that there is no substantial evidence in the record to support a finding that the plaintiff became permanently and totally disabled on the date alleged in the petition in this cause, or on any date prior to the lapse of the insurance herein sued upon.

"The Court: Taking into consideration all of the evidence introduced in this case, and the law laid down by the Tenth Circuit Court of Appeals, this Court cannot find that the plaintiff was totally and permanently disabled during the time the policy was in force.

"Mr. Wade: Might we have the privilege of briefing this before you enter your judgment

"The Court: I will tell you what you can do, if you want to. You can file a motion for new trial and I will hold up the judgment and then you can file a brief if you want to.

"Mr. Wade: I will do that. * * *

"I would like to know whether that is on the merits or on the motion?

"The Court: I will sustain the motion. I don't think there is any chance for you under all this testimony. Why that report shows two or three times there—Doctor's report that she was under observation for tuberculosis and they didn't find any, and that was two or three years after this policy lapsed. * * *

"Thereafter on the —— day of September, 1936, the plaintiff filed a motion for a new trial, which motion, omitting the caption, is in the words and figures as follows, to-wit: * * *

"Thereafter on the —— day of ——, the Court being fully advised in the premises, overrules Plaintiff's motion for a new trial and renders judgment for the defendant as follows, to-wit: * * *

"To which ruling, finding and judgment, the plaintiff excepts."

In Journal Entry it is also recited that trial commenced on 28th day of September, 1936 * * * continued over until the 29th day of September, 1936, and that:

"Thereupon, the defendant at the close of plaintiff's evidence, files its motion for judgment and the Court reserves its ruling thereon.

"Thereupon, the defendant introduces its evidence and rests, and the plaintiff introduces her evidence in rebuttal and rests.

"Thereupon, at the close of all of the evidence, the defendant files its motion for judgment on the ground and for the reason that there is no substantial evidence to prove that the plaintiff became permanently and totally disabled at the time alleged in her amended petition or at any time while the policy of insurance sued upon was in effect, and the Court being fully advised in the premises, finds that said motion should be sustained.

"It is therefore by the Court considered, ordered and adjudged, that defendant's motion for judgment made at the close of all the evidence be and it is hereby sustained and it is ordered that plaintiff take nothing herein and that defendant have judgment for costs.

"To which decision and order of the Court, the plaintiff excepts and her exceptions are hereby allowed."

The evidence is sufficient to establish that plaintiff was suffering from tuberculosis at the time she returned from the Army. Records of physical examinations of the Veterans Bureau which were introduced by plaintiff disclose that this condition has become arrested from time to time. Dr. Bates made an examination of plaintiff in 1936, and found an arrested case of tuberculosis. He also expressed an opinion that plaintiff was not totally and permanently disabled from carrying on nursing duties.

This court in Nicolay v. United States, 51 F.2d 170, 173, said: "It is a matter of common knowledge that many such incipient tuberculars respond readily to the simple treatment of rest and nourishment; the activity is arrested, and, while there probably always will be a susceptibility of recurrence, they are able to, and do, live out their lives following gainful occupations."

See, also, United States v. McShane, 10 Cir., 70 F.2d 991, 996; United States v. Harrell, 10 Cir., 66 F.2d 231; United States

v. Thomas, 10 Cir., 64 F.2d 245; United States v. Rentfrow, 10 Cir., 60 F.2d 488; Roberts v. United States, 10 Cir., 57 F.2d 514; United States v. Fitzpatrick, 10 Cir., 62 F.2d 562; and Eggen v. United States, 8 Cir., 58 F.2d 616.

At time plaintiff was discharged from the Army service there is no evidence to show that her condition was such that she could not resist the ravages of disease, as in United States v. Thomas, supra, it appearing that as to appellant the tuberculosis became arrested on several different occasions, as late as 1936.

The contention advanced for reversal is that the Court erred in sustaining the motion on part of the government and entering judgment in its favor. That question depends upon whether there is substantial evidence to support such action of the court. Neither request nor motion was made by appellant (plaintiff) at any time during the trial for a declaration of law and judgment in her favor. See White v. United States, 10 Cir., 48 F.2d 178; Ellen Wall et al. v. United States, 10 Cir., 97 F.2d 672; Wolff v. Stenger, 59 S.D. 231, 239 N.W. 181; and 4 Corpus Juris Secundum, Appeal and Error, § 299 at page 600.

We have carefully examined the record, giving attention and consideration to all questions presented.

Judgment of lower court should be affirmed.