## UNITED STATES v. BREWER.
### No. 10629.

Circuit Court of Appeals, Eighth Circuit.
Jan. 27, 1937.

Keith L. Seegmiller, of Washington, D. C., Atty. Department of Justice (Edwin G. Moon, U. S. Atty., of Des Moines, Iowa, William R. Sheridan, Asst. U. S. Atty., of Keokuk, Iowa, Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., on the brief) for the United States.

George F. Anderson, of Kansas City, Mo., for appellees.

Before · SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

Ray P. Brewer was in the military service of the United States from May 27, 1918, until March 20, 1919. He was granted $10,000 of war risk insurance. He paid no premiums thereon after his discharge, but uncollected compensation for service-connected disabilities continued $9,759.44 of his insurance in force up to January 12, 1922, by virtue of section 305 of the World War Veterans' Act of 1924, chapter 320, § 305, 43 Stat. 626 (title 38, U. S.C. § 516 [38 U.S.C.A. § 516]). On December 1, 1931, he commenced an action to recover this insurance, asserting that his policy had matured prior to January 12, 1922, because of his total and permanent disability; that in 1931, prior to the commencement of the action, he had made claim for payment of his insurance, and that it had been denied. He died December 21, 1931, from nephritis. The appellees, who are the administratrix of his estate and the designated beneficiary under his policy of insurance, were substituted as plaintiffs. The government in its answer to the plaintiffs' amended petition denied that the insured was totally and permanently disabled as alleged by the plaintiffs. The case was tried, and at the close of the evidence both sides moved for a directed verdict. The court found for the plaintiffs, and, from the judgment en-

tered upon the court's findings, this appeal was taken.

The government contends that there was no substantial evidence to support the finding that the insured's disability prior to January 12, 1922, was total and permanent; and that is the only question presented to this court.

In dealing with this question it must be kept in mind that, "The phrase 'total permanent disability' is to be construed reasonably and having regard to the circumstances of each case"; that: "'Total disability' does not mean helplessness or complete disability, but it includes more than that which is partial. 'Permanent disability' means that which is continuing as opposed to what is temporary. Separate and distinct periods of temporary disability do not constitute that which is permanent. The mere fact that one has done some work after the lapse of his policy is not of itself sufficient to defeat his claim of total permanent disability. He may have worked when really unable and at the risk of endangering his health or life. But manifestly work performed may be such as conclusively to negative total permanent disability at the earlier time." Lumbra v. United States, 290 U.S. 551, 558, 559, 560, 54 S.Ct. 272, 276, 78 L.Ed. 492.

At the time the insured was inducted into the service he was twenty-three years of age, had a seventh grade education, and was a farm hand. His physical examination shows that he weighed 147 pounds, had no physical or mental impairment, and was qualified for general military service. In October, 1918, he contracted influenza while in France, had an abscess of his right hip, and an inflammation in his left ear (otitis media) causing partial deafness. He was hospitalized until about the time of his discharge from the service. A urinalysis made January 14, 1919, showed a trace of albumin, while one made on March 1, 1919, showed albumin heavy, occasional leucocyte, occasional red blood cells, occasional hyaline, and moderate number of granular casts.

On March 14, 1919, he was examined for discharge at Camp Dodge, Iowa, and pronounced cured, with no disability.

The plaintiffs introduced in evidence reports of physical examinations made by government physicians to the Veterans' Administration, which, so far as material, we summarize as follows:

Report of March 30, 1922:

Insured admitted to Veterans' Hospital at Colfax, Iowa, February 13, 1922; examined March 30, 1922. Complained of pain in left chest; recurrent pain in and behind left ear, accompanied with general malaise and weakness. Ear complaint dates from influenza in France. Weight, 141 pounds. Urinalysis—slightest possible trace of albumin, with occasional hyaline cast. Otitis media chronic (suppurative) left, incurred in service; hearing left ear 4/40. Diagnosis and prognosis: (1) Adhesions of pleura—favorable; (2) otitis media, chronic, suppurative—guarded; (3) mastoiditis chronic left—guarded. Insured discharged from hospital March 30, 1922, and referred to Veterans' Hospital, Des Moines, for further treatment. Partially able to resume prewar occupation; hospital care advised; vocational training not feasible at this time.

Report of May 8, 1922:

Insured admitted to Des Moines Hospital on or about March 30, 1922, with diagnosis of otitis media left. Reported daily for treatment, and discharged May 8, 1922. "Condition improved." Urinalysis of March 31, 1922: Albumin, heavy trace. Diagnosis: T. B. pulmonary chronic incipient left, quiescent; otitis media left. Prognosis, favorable. Not able to resume prewar occupation; vocational training feasible.

Report of September 26, 1922:

Present complaint, "I am sore all over the chest." Special urinalysis: "Albumin positive; Micro: few hyaline and granular casts, many pus cells, few uric acid crystals, few mucous threads and cylindroids." Diagnosis: Otitis media chronic left; neurasthenia. Prognosis, favorable. Able to resume prewar occupation; no vocational handicap; vocational training feasible.

Report of October 10, 1922:

Admitted to Veterans' Hospital, St. Louis, September 27, 1922. Examined September 28, 1922. Claims to be weak and unable to work during last year and has lost 10 pounds in last twelve months. Left ear has discharged and hearing has grown worse. Pains in chest and poor hearing. Urinalysis of October 5, 1922: Albumin positive, few hyaline and granular casts, many pus cells. Albuminuria. Otitis media chronic—"treatment of no value." Diagnosis: Nonsupp. left—un-

favorable, more than 10 per cent.; auditory nerve paralysis on left; rhinitis mild, chr.—good, less than 10 per cent. Prognosis: Pharyngitis, chr. mild; laryngitis mild chr.—good, less than 10 per cent. Not at present able to resume prewar occupation. .Hospital care advised. Vocational training not at present feasible.

Report of October 21, 1922:

(Supplemental Report Veterans' Hospital, St. Louis.) Cystoscopic examination of October 13, 1922, showed benign tumor of bladder (polyps). Prostatitis chronic. Otitis ·media chronic, nonsuppurative, left; auditory nerve paralysis left. Urinalysis showed albumin, hyaline and granular casts with pus cells. Further hospitalization necessary.

Report of November 16, 1922:

Admitted to Veterans' Hospital, St. Louis, for treatment of otitis media and albuminuria. Referred to G. U. service October 9, 1922. Cystoscopic showed no kidney infection. Prostate showed pus. Urine showed albumin with granular casts. Polyps removed. "Patient is anxious to return home and the further treatment of the prostatitis and nephritis can be carried out at home." Examination of urine of October 18, 1922, shows albumin and blood positive, many pus and blood cells; otherwise negative.

| Diagnosis: | Condition on Discharge: | |
|---|---|---|
| 1155. Otitis . Media, chr. non-suppurative, left. | Untreated, Stationary. | |
| 1200: Auditory nerve paralysis, left. | " | " |
| 1713: Tumor of bladder, benign, [polyp] | Treated, | improved. |
| 1383: Prostatitis, chronic. | " | " |
| 1063: Nephritis, chr. parenchymatous | " | " |
| 1604: Rhinitis, chr. mild | " | " |
| 1300: Pharyngitis, chr. mild | " | " |
| 0885: Laryngitis, chr. mild | " | " |

| Prognosis: | Degree of disability. |
|---|---|
| 1155 and 1200: Stationary | More than 10% |
| | 1713: more than 10% |
| 1713 and 1383: Fair | 1383: less than 10% |
| 1063: Fair | Less than 10% |
| Others: Good | Less than 10% |

Not able to resume prewar occupation, account of physical condition. Vocational training feasible.

Report of December 6, 1923:

Present complaint: "Have pain through my chest and across my kidneys; my hearing is poor in my left ear." Urinalysis: albumin ††; few finely granular casts. Diagnosis: deafness partial left;

otitis media suppurative left ear. Prognosis: guarded. Able to resume prewar occupation. Hospital care not advised. Vocational training feasible.

Report of August 14, 1924:

(United States Veterans' Hospital, Jefferson Barracks, Mo.) "Present illness: Had influenza and pneumonia in service, from which he never recovered, leaving him with cough which reoccurs frequently; general weakness and so is unable to work. Evolution and course to admission: Soon after discharge attempted to do farm work, but soon broke down, breathing being difficult, tires easily on slight exertion and called on Dr. Stephenson, Milton, Iowa, for examination. Soon after went to Oxford, Nebraska, for treatment by Dr. Cone; under his care one month, with some improvement. About six months later became worse, with pain in left side, and was in bed most of winter, under care of Dr. Shank, Oxford, Nebr., for pleurisy and kidney trouble. Then applied for and received one month's treatment for chest from Veterans Bureau at home. Was sent to Colfax Hospital for six weeks, under observation and treatment of T. B. Was then transferred to Des Moines for treatment of ears, and then returned home. Had reoccurrence again in winter of 1922, and was treated by Bamford Clinic, Centerville, Iowa; remained about two weeks with some improvement. Was called to Hospital No. 35 in October 1922, remaining 45 days under treatment for nephritis, when was discharged. Next trouble was in July 1923, when he was under treatment of Dr. Gilfilen, Milton, Iowa, for ten weeks, where he seemed to improve fast. No serious illness since, but frequently felt badly until present admission.

"Chief Complaint: Pain in left side, back and ears."

Urinalysis of July 24, 1924: albumin 3; casts 1; W.B.C. 1.

Urinalysis of July 24, 1924: albumin 4; W.B.C.O.

| Diagnosis: | Prognosis | Disability |
|---|---|---|
| Under obs. for Pulm. T. B. (none found) | | |
| Under obs. for N. P. Condition | Undet. | Undet. |
| Otitis Media nonsupp. rt. supp left | Unfavorable | over 10% |
| Tonsillitis, chr. | Favorable | less 10% |
| Deviated Septum | Favorable | less 10% |

Not able to resume prewar occupation at present. Hospital care advised. Vocational training not feasible.

·Report of September 4, 1925:

(United States Veterans' Bureau Medical Service, Des Moines.) ·Present complaint: Hearing—left ear; lungs— coughs; headaches; sharp pains all over chest and arms; pains in left chest and across back; stomach pains and cramps. Urine negative. Diagnosis: astigmatism; dev. nasal septum; tonsillitis chr. bil.; otitis media chr. supp. left; otitis media chr. cat ·rt.; bronchitis chr. Prognosis— guarded. Hospital care not advised; vocational training feasible.

Report of February 15, 1926:

Admitted to Veterans' Hospital Kansas City January 14, 1926; discharged February 12, 1926. Further hospitalization not necessary. Present complaint: pain in left ear; headache; sore throat. Urinalysis: albumin, positive; R. B. C., few; W. B. C., numerous; epithelia, few; casts, hyaline and granular. Tonsillectomy performed. Diagnosis: otitis media left. Prognosis: guarded. Hospitalization not recommended; vocational training feasible.

Report of November 20, 1929:

Neuropsychiatric Examination. Present complaint: "My ears bother me; I have pain in my head, and I am weak. I sleep fairly well; my appetite is fair, and I don't see much change in my weight."

·"Mental Examination: The claimant is fairly tidy in his appearance; he is very deaf; it is difficult to talk to him; however his answers are apparently relevant; we could bring out no delusions, hallucinations, or illusions; no particular fears, phobias or obsessions; scattered psychometric test reveals he is of low-grade intelligence, but a complete psychometric could not be done at this time, and it is hardly necessary. The man evidently has some severe organic disease in the form of a nephritis and an otitis media, and some other disabilities and these account for his present condition.

"Neurological Diagnosis: Mental deficiency—moron."

In addition to what these reports reflect with respect to the physical condition of the insured on and prior to January 12, 1922, and as to the probability of his having an incurable and disabling nephritis prior to the lapse of his insurance, there is the testimony of the physicians who were called by the plaintiffs. Dr. Stephenson testified that he examined the insured in the spring or summer of 1922, and made a diagnosis of chronic nephritis and otitis media; that the insured was a slight man with a sickly.pallor; that he came to the doctor's office at various times, and that every time a urinalysis was made it showed albumin; that the doctor told him to go home and avoid work as much as possible, and prescribed a diet; that the usual treatment for nephritis is rest and dietetic treatment. Based upon the urinalysis of March 1, 1919, the subsequent medical history and other facts disclosed by lay evidence in the case, the doctor expressed the opinion that the condition of chronic nephritis persisted from the time he first examined the insured in the year 1922 until the insured died in December, 1931. He also expressed the opinion that in 1922, at the time the insured consulted him, work would have been detrimental to his health.

Dr. Bamford, a witness for the plaintiffs, testified that he operated the Bamford Clinic in Centerville, Iowa, and had occasion to examine the insured August 9, 1922; that his weight was then 140 pounds; that a urinalysis showed a marked albuminuria, "which nephritic condition probably accounts for all his symptoms." The diagnosis was nephritis. The doctor expressed the opinion, based upon the medical history shown by the record, that the insured was suffering from chronic nephritis from March 1, 1919, to the time of his death. He also expressed the opinion that the insured on January 12, 1922, was not in condition to engage in work without injury to his health, and that this condition was a permanent one.

Dr. Braun, also a witness for the plaintiffs, testified that he was on the Review Board at Fort Dodge, which purported to examine the insured at the time of his discharge and which had certified that he had no disability. He stated that at that time the Board examined, for discharge, as many as 3,000 men a day; that it would be very difficult in some cases to detect internal condition during such an inspection as the Board gave there; that he was not advised, when he examined the insured, of the urinalysis made on March 1, 1919; and that, examining the report of such urinalysis, it in his opinion indicated a condition of severe nephritis.

Dr. Fuller, another witness for the plaintiffs, basing his opinion upon the plaintiffs' evidence, stated that in his opin-

ion the insured on January 12, 1922, was suffering from a chronic nephritis which was incurable.

Dr. Dorsey, also a witness for the plaintiffs, basing his opinion upon the plaintiffs' evidence, expressed the opinion that the insured had an incurable chronic nephritis from 1919 on, and that at no time was the insured able to work; that he was not able to work because of his physical weakness, and that, if he tried to work, the probability is that the infection would have become more acute.

The testimony of lay witnesses—without setting it forth in detail—presents the picture of a man returning from the Army after discharge very much run down and weakened, who attempted to resume his prewar occupation within a comparatively short time thereafter. While able to do the lighter kinds of farm work satisfactorily, he was frequently exhausted, sick and unable to do heavy work at all or to do light farm work continuously. The evidence shows that up to the fall of 1921 the insured had farmed for himself and others reasonably well. His disability up to that time may have been permanent, but probably was not total. It was a permanent partial disability and was so recognized by the government in awarding compensation.

The government's contention is that the insured's work record from 1922 precludes any finding of total and permanent disability as early as January 12, 1922. There is nothing impressive about the insured's attempts to engage in gainful occupations after January 1st of that year. The reports of examinations, to which we have referred, indicate that throughout 1922 the insured spent much of his time in government hospitals. · Other evidence shows he did no work during 1922. In 1923 he moved to a 17-acre farm near Milton, Iowa, which he rented for $150 a year, and where he remained for two and one-half years. There he and his wife had three or four acres in hay, about one acre in a garden or truck patch, the balance being pasture. His wife put in the garden with his help; his neighbors helped him put up his few loads of hay; and he repaid them by working for them when able to do so. He was then drawing compensation and his wife took in washing to make ends meet. According to her testimony and that of others, he was weak and was frequently unable to work at all and

was completely· exhausted when he did work. He occasionally worked by the day for W. J. Allen, a farmer, who paid him current wages for farm hands. Checks introduced in evidence show that in 1926 he received from Allen $13.50, and in 1927, $12.50; in 1928, $76.65, and in 1929, $14.-50. The evidence would have justified a finding that during the years 1923 to 1928 there were certain kinds of farm work which the insured was at times able to do; but there is nothing which would require a finding that he was able to regularly engage in gainful labor during those years. The evidence also shows that in 1926 the insured bought an old Ford touring car for $75, and attempted to operate a taxi in the town of Milton; that he had two regular customers, a traveling man and a school teacher, who employed him to drive them once or twice a week. A statement which he made in connection with his application to the government for compensation indicates that he made $15 a month from the operation of his car, but his wife testified that he did not even make expenses. The evidence also indicates that often he was too ill to drive.

The activities of the insured after the fall of 1921 and up to the time of his death do not show conclusively that his disability had not become total prior to January 12, 1922. United States v. Thomas (C.C.A.10) 64 F.(2d) 245; United States v. Pearson (C.C.A.10) 65 F.(2d) 996; United States v. Mathis (C.C.A.10) 84 F.(2d) 451, 452; United States v. Flippence (C.C.A.10) 72 F.(2d) 611, 613; Muth v. United States (C.C.A.4) 78 F.(2d) 525; United States v. Nickle (C.C.A.8) 70 F.(2d) 873; United States v. Rice (C.C.A.8) 72 F.(2d) 676, 677; Lumbra v. United States, 290 U.S. 551, 561, 54 S.Ct. 272, 276, 78 L.Ed. 492.

The evidence, taking that view of it which is most favorable to the plaintiffs, as we are required to do, Lumbra v. United States, supra, 290 U.S. 551, at page 553, 54 S.Ct. 272, 273, 78 L.Ed. 492, indicates that the insured had an incurable nephritis prior to January 12, 1922 (although not known to him or to the government), which had by that date reached a stage which made it impossible for him then or thereafter to engage in any substantially gainful occupation with any reasonable degree of regularity. We do not. say that the evidence required such a finding, but merely that it justified such a find-

ing. It is to be noted that the government introduced no medical evidence tending to show that the insured's disability prior to January 12, 1922, was nòt incurable or completely disabling or that the basis for the opinions of the plaintiffs' experts that it was total and permanent was insufficient to support such opinions. In fact, the government introduced no medical evidence at all. This court would not be justified in holding that the opinions of the reputable and qualified physicians who testified for the plaintiffs as to the nature and extent of the disease with which the insured was afflicted were without a sufficient factual basis in the evidence. It is conceivable, of course, that the insured's disease had not on January 12, 1922, reached the stage of total permanent disability, but the court below, who heard the witnesses and weighed the evidence, has found to the contrary, and we regard the evidence upon which that finding was based as being substantial.

■ Our attention is called to the failure of the insured to file a claim for his insurance, and to bring suit, until 1931. In the Lumbra Case it was said (page 560 of 290 U.S., page 276 of 54 S.Ct., 78 L.Ed. 492): "And in the absence of clear and satisfactory evidence explaining, excusing, or justifying it, petitioner's ·long delay before bringing suit is to be taken as strong evidence that he was not totally and permanently disabled before the policy lapsed."

There are circumstances in this case which very much weaken the effect of the insured's delay in bringing suit. There was testimony that chronic nephritis impairs the mental faculties of a person afflicted with it. In addition, there is the report of examination, already referred to, showing that by 1929 the insured was mentally deficient. Furthermore, this suit is brought for insurance revived by section 305 of the World War Veterans' Act of 1924. The insured's right to have this insurance did not come into existence until the passage of that act. Moreover, his right to invoke section 305 in a suit upon his insurance policy was not definitely settled until the cases of United States v. Vance (C.C.A.8) 48 F.(2d) 472, and United States v. Crowell (C.C.A.8) 48 F. (2d) 475, were decided by this court on March 11, 1931.

In view of the evidence of a probable mental deterioration of the insured, of the uncertainty existing prior to 1931 of his right to sue for the insurance revived by section 305, and of the very great improbability that he was ever advised or understood that he had, in addition to his other troubles, an incurable nephritis which would prevent his working with reasonable regularity and which would become progressively worse until death ensued, we think his beliefs as to his condition, as shown by his delay in bringing suit or making claim for insurance or by his statements in connection with his applications for compensation, should not be treated as conclusive evidence that he was not totally and permanently disabled while his policy was in force.

If the facts are as the court below found them to be, the government on January 12, 1922, owed the insured what the policy then called for, and now owes it to the plaintiffs. It cannot be said as a matter of law that the court was wrong.

The judgment is affirmed.