**TRUST CO. OF FLORIDA et al. v. GAULT et al.**

**No. 7111.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 14, 1934.

On Appellants' Motion to Modify Opinion
March 1, 1934.

Robert S. Florence and Mitchell D. Price, both of Miami, Fla., for appellants.

M. H. Rosenhouse, of Miami, for appellees.

Before BRYAN, SIBLEY, and HUTCH-ESON, Circuit Judges.

SIBLEY, Circuit Judge.

2] This appeal is supposedly one in equity. Equity Rule 75 (28 USCA § 723) requires that the appellant make a statement of the evidence in simple and condensed narrative form, omitting unnecessary parts, and that the judge approve it. Instead of such a statement, we have 195 pages of printed record entitled: "Transcript of the testimony of certain witnesses as given in this cause, copied in hæc verba," and signed and authenticated only by the court reporter. It contains not only questions and answers in full,

but apparently all the remarks of the court and counsel. It is not a statement of the evidence. Rule 76 (28 USCA § 723) provides that for such infractions costs may be imposed on offending solicitors as well as parties. The cost of this portion of the transcript and of printing it are imposed on appellants and their solicitors jointly. Not being approved by the judge, it must be wholly disregarded.

Considering the appeal on the pleadings, with exhibits, and on the fact findings of the court, we must reverse. There has been a fundamental misconception of the relationship of bondholders to the distributor of the bonds, and a confusion of it with their relationship to the trustee in the bond mortgage who happened to be the same corporate person. It appears that one Marshall, reputed to be wealthy, desired to build a hotel upon lots which he owned in Fort Lauderdale, Fla., and, to assist in financing it on January 15, 1926, he executed his bonds to an amount of $350,000, and secured them by a mortgage on the lots to Trust Company of Florida as trustee for bondholders, with the conditions and covenants usual in such instruments. The bonds were all delivered by Marshall to the Trust Company to be sold for him, but the details of the sales agreement do not appear. The Trust Company issued advertising circulars which are criticized as untrue mainly in that they asserted that a surety bond existed guaranteeing the completion of the proposed hotel free of liens. Of the bonds $181,800 were sold; $168,200 remaining unsold. About April 15, 1926, the building contractor failed; no completion bond having been furnished. The Florida boom was subsiding, and the hotel was never completed. On June 15, 1926, the Trust Company had on hand $110,000 of money from the bond sales. In June, 1927, Marshall made an agreement with Marion Mortgage Company, a subsidiary of the Trust Company of Florida, whereby the Mortgage Company should arrange to take over the unfinished hotel and pay off building liens against it, should redeliver to Marshall the unsold bonds, and use the $110,000 in the hands of the Trust Company to redeem bonds which had been sold; the apparent purpose being to relieve Marshall and the Trust Company of responsibility by retiring all bonds and to reorganize and complete the hotel. The sum of $54,000 was used by the Trust Company to pay off liens contrary to the agreement, which was not carried out by Marion Mortgage Company. The Trust Company claims to have paid out the remainder of the money except $2,934 for bond interest and other things. The interest on outstanding bonds finally went into default, and the Trust Company foreclosed on the unfinished hotel and acquired title for the bondholders. Four bondholders, ostensibly suing for all, brought this bill against Trust Company of Florida as sole defendant on November 12, 1931, but two weeks later the Trust Company, because of insolvency, was taken over for liquidation by the Comptroller of Florida, and his liquidator was made a party defendant. The bill sought an account of the money obtained from the bond sales as of a trust fund, and of the proceeds of unused building materials sold by the Trust Company, denying that any of the money should have been used to pay the liens on the uncompleted building. It did not seek to administer the building, and did not set up the transaction with Marion Mortgage Company, nor the fact of foreclosure. At first a general receivership was prayed for all the assets of the Trust Company, but, after the liquidator became a party by amendment, the contention was made that the bond sale money, being a trust fund, was used by the Trust Company to protect other unidentified properties, and a tracing of it into them was prayed, together with a general preference lien on all the assets of the Trust Company of Florida. The findings of fact fail to trace any money into any assets of the Trust Company in the liquidator's hands. The decree held the Trust Company and its liquidator liable to the complainants for the use of all bondholders in a sum of $108,870.-84 principal, with interest to date $47,438.-97, $2,934.00 thereof being adjudged a preferred claim; and two conservators were appointed to collect and distribute this recovery. The hotel property, into which it was found about $70,000 of the bond sale money had gone, was also adjudged to belong to the bondholders, and steps ordered taken by the conservators looking to its sale. The Trust Company and its liquidator appealing assign error on the decree and on the overruling of their motions to dismiss the bill for want of equity and because of adequate remedy at law.

Had the bill sought to administer the mortgaged property, including perhaps the building materials bought to be used in it and apparently surrendered to the trustee in the mortgage, there would have been a case in which these bondholders could sue in behalf of all, and the decree so far as it affects this property could be sustained. We do not think that the liquidation of the Trust Com-

pany begun after the filing of the bill would, when the liquidator is made a party, prevent the court from thus enforcing a single trust in which the Trust Company was trustee. This would not be an ousting of the liquidator and the Comptroller from their functions as administrators of the assets of the Trust Company of Florida such as we refused to sanction in Amos, Comptroller, v. Trust Company of Florida (C. C. A.) 54 F.(2d) 286, 288, and Bank of Bay Biscayne v. Hankins (C. C. A.) 42 F.(2d) 209. But the bill was altogether wrong in asserting that the proceeds of the bonds were held by the Trust Company under any trust for the bondholders. In selling the bonds, the Trust Company was not acting as trustee under the mortgage. There is nothing in the mortgage referring to the proceeds of the bonds or the use to be made of them. It does not make the Trust Company, as trustee, paymaster over the building activities, which are not even mentioned. In selling the bonds, the Trust Company acted as the agent of Marshall, and was accountable to him alone for the proceeds, which belonged to him. It owed the purchasing bondholders good faith and all that any statute required in that connection, but that is all. The false representation made as to the existence of a surety bond guaranteeing completion of the building was found to be fraudulent. Each complainant and any bondholder who was deceived by it could, because of the fraud, promptly have rescinded the purchase of his bond or, electing to keep the bond, could sue for the damage arising from the deceit. But such suits would be several actions at law depending on the facts of each transaction and not a class suit in equity. The insolvency of the Trust Company would not entitle them to equitable relief prior to obtaining judgment. Hamilton Michelsen Groves Co. v. Penney (C. C. A.) 58 F.(2d) 761, and cases cited. These complainants have kept their bonds and thereby have elected to affirm the purchase of them, and by consequence they have no right or title to the money paid for them, even if it could be found or traced. They had no control over its disposition. Of such of the money as the Trust Company had on hand when the building was suspended, it owed an account to Marshall as its principal, and not to the bondholders who elected to hold their bonds against Marshall. When Marshall agreed with Marion Mortgage Company that it use this money in his behalf to retire the bonds outstanding against him, it was no trust in behalf of the bondholders, and, if it was, Marion Mortgage Company, and not

Trust Company of Florida, was the trustee of it. Such a trust is not sued on. If under special circumstances the bondholders might have insisted on the money being used in the building, they are not here so insisting, but are complaining of such use. The complainants cannot be entitled to recover the money which improved the mortgaged property and also to own the mortgaged property. The decree rendered to this effect cannot stand. The motions to dismiss ought to be sustained unless by amendment the complainants shall be allowed to proceed at law as for deceit, or to pursue in equity some true right against the Trust Company of Florida as trustee in the bond mortgage, or against the mortgaged property.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

## On Appellants' Motion to Modify Opinion.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

### PER CURIAM.

A motion is made to modify the opinion in this case by withdrawing the ruling concerning the so-called statement of evidence on the ground that what was done was authorized by the District Judge. Our attention is called to the order allowing the appeal, which contains these words: "And that a certified copy of the record, testimony in hæc verba, exhibits, stipulations and all proceedings be forthwith transmitted to the said Circuit Court of Appeals." While on this order the clerk might certify exhibits and testimony taken by interrogatories or depositions or by an examiner appointed by the court when duly filed, testimony taken in open court under Equity Rule 46 (28 USCA § 723) cannot become a certifiable part of the record otherwise than by an authentication and filing under the order of the judge who heard it. Buessel v. United States (C. C. A.) 258 F. 812. There is no such official known to a federal court of equity as a court reporter with authority to sign and file a report of the trial. A stenographer employed by the parties reports only to his employers, and his work can obtain authenticity only by the approval of the judge. But, if the report of the trial here in question had been approved and ordered filed, it would still not be a condensed and narrative statement of the evidence conforming to Equity Rule 75 (b), 28 USCA § 723. The provision of that rule that, if either party desires it and the judge

so directs, any part of the testimony shall be reproduced in the exact words of the witness, cannot· be extended to embrace all the testimony nor to justify inclusion of motions, arguments, and rulings and other occurrences which are not evidence at all. Barber Asphalt Paving Co. v. Standard Co., 275 U. S. 373, 48 S. Ct. 183, 72 L. Ed. 318. The very purpose of the rule is to prevent these things being done and to save the appellate court from the labor of winnowing the evidence and the party losing the appeal from the needless costs. Newton v. Consolidated Gas Co., 258 U. S. at page 174, 42 S. Ct. 264, 66 L. Ed. 538. The Circuit Court of Appeals may decline to re-examine the evidence when not condensed as required by the rule. Fairbanks, Morse & Co. v. American Co., 276 U. . S. 305, 48 S. Ct. 317, 72 L. Ed. 584. It may enforce the rule by ·imposing costs on parties and solicitors. Equity Rule 76 (28 USCA § 723). Since the duty of condensation is on the solicitor as between him and his client, it is quite apparent that the costs ought ordinarily to fall on him, though the appellant as his principal is also held liable to the court officials and the opposite party. So early as the year 1913 in Coxe v. Peck-Williamson Co., 208 F. 409, this court warned that it would thus enforce the rule, as did the Supreme Court in 1921 in Newton v. Consolidated Gas Co., supra. See in the Sixth Circuit in Re General Equity Rule 75, 222 F. 885. The equity rules have the force of law, and cannot be overridden by an order of the District Judge or by consent of parties. Buckeye Cotton Oil Co. v. Ragland (C. C. A.) 11 F.(2d) 231.

We see no need to modify the opinion, and the motion is denied.