## HUGHES v. UNITED STATES.
### No. 1373.

Circuit Court of Appeals, Tenth Circuit.
March 31, 1936.

Benjamin E. Cook, of Ponca City, Okl., for appellant.

Randolph C. Shaw, of Washington, D. C. (William C. Lewis, U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an appeal from a judgment for the defendant in a suit to recover on a policy of war risk insurance. Insured enlisted on July 25, 1918, and was discharged on April 19, 1919. Payments of premium and the grace period continued the policy in force until June 1, 1919. Total and permanent disability prior to that date was alleged and denied. The case was tried to a jury, and at the conclusion of the evidence the court directed a verdict for the defendant. The single question argued is whether that action constituted reversible error.

Insured was a farmer and had a fifth grade education. In December following his enlistment he contracted spinal meningitis and was confined in hospitals from that time until a few days prior to his discharge. As a part of the treatment his spine was punctured several times. At the time of discharge he was weak and the locomotion of his right leg was impaired. He dragged it when he walked. His head and back ached almost continuously and he had difficulty in sleeping at night. His back has caused him pain since, and when he engages in work requiring its use the pain increases, his head aches, and he becomes nervous. His hip is out of joint a part of the time; he sometimes feels at night as though he is paralyzed and he is unable to move. He and his first wife were divorced a few days after his return home and he remarried in the following October. In June or July, 1919, he purchased two teams with money paid him at the time of discharge and engaged in contract work until the fall of 1922. He drove one of the teams a part of the time and hired a man to drive the other. He was unable to load the wagon or do heavy work, and sitting on the wagon while driving caused pain in his back and made him nervous. In addition to driving a team a part of the time, he acted in a supervisory capacity, looking after the teams and outlining the work to be done. In the fall of 1922 he moved to a farm and remained there until March, 1923. He moved from there to another farm and raised a crop. He was unable to do heavy work, but did chores and other light work. From there he moved to Ponca City, Okl., and re-entered the teaming business; and he continued in it until February, 1924. He did none of the loading or unloading of wagons; his duties being to obtain contracts and look after the office. He usually received from $6 to $8 per day for each team, out of which he paid all expenses, including a wage of $3.50 to the driver. He hired his teams to Rhyner and Heninger from March, 1924, until the fall of that year; and, when they obtained a contract, the time sheets were kept in his name and he received the checks in payment for the work. The combined time devoted to the contracting business was about three years. Insured entered into a contract with Harville in 1926 for the operation of a hog business on some land which insured had leased. Harville was to supply the capital and insured was to furnish the labor, but Harville was obliged to furnish some of it. Except as already detailed, insured has spent all of his time since the date of discharge on farms, and he has moved from place to place. Usually his wife's parents, his own parents, or other relatives did most of the heavy work. Insured did light chores and odd jobs, and occasionally he did some plowing and cultivating, but due to the condition of his back he was unable to do heavy work. During a part of the time he has earned

enough to pay his living expenses and at other times his relatives furnished the money for that purpose. He has owned and driven an automobile regularly since 1923. Medical testimony was submitted to the effect that he had suffered a partial stiffness in the lower spine; that certain muscles did not function; that those in the back could not be relaxed; that in consequence flexibility of the spine had been impaired; and that such condition caused pain and nervousness. The experts agreed that his condition was permanent, but they disagreed as to whether he was capacitated to do light work.

 The burden rested upon insured to establish by substantial evidence the fact that he was totally and permanently disabled before the policy lapsed for nonpayment of premium. Roberts v. United States (C.C.A.) 57 F.(2d) 514; United States v. Pearson (C.C.A.) 65 F.(2d) 996; United States v. Harrell (C.C.A.) 66 F.(2d) 231. In meeting that requirement it was not enough to show that he was unable to follow his pre-enlistment occupation. The test is whether he could follow continuously any substantially gainful occupation. Even though he was unable to pursue his pre-enlistment occupation, if he could perform continuously some lighter or less strenuous work which was substantially gainful in character, he cannot recover. United States v. Luckinbill (C.C.A.) 65 F.(2d) 1000; United States v. Derrick (C.C.A.) 70 F.(2d) 162, and cases there cited.

The evidence discloses that insured was able to do light work. He did it without aggravating his condition, and there is nothing in the record to indicate that his disability is progressive in nature. On the contrary, it appears that the impairment of his leg has lessened since his discharge. He weighed 125 pounds at the time of enlistment and 118 pounds at the time of trial. His remarriage with the assumption of added responsibilities is a circumstance which indicates that he did not then believe he was totally and permanently disabled. United States v. Adcock (C.C.A.) 69 F.(2d) 959. And the long unexplained delay of almost thirteen years in instituting this action is a further circumstance which indicates strongly that he did not believe he was so disabled while the policy was in force. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; Miller v. United States,

294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977; United States v. Gower (C.C.A.) 71 F.(2d) 366; United States v. West (C.C.A.) 78 F.(2d) 785. Viewed most favorably to insured, the evidence discloses partial and permanent disability. Compare United States v. Steadman (C.C.A.) 73 F.(2d) 706; United States v. Green (C.C.A.) 69 F.(2d) 921. Recovery cannot be had upon partial disability even though it is permanent. United States v. Caldwell (C.C.A.) 69 F.(2d) 200. It must be both total and permanent.

Attention is directed to a flagrant disregard of a rule of this court in the preparation of the bill of exceptions before us. Much of the testimony is set forth verbatim; that is, in the form of questions and answers. No effort was made to condense it in compliance with our rule 10. Preparation of a bill of exceptions in such form is emphatically disapproved, and we would be justified in disregarding the bill or in imposing costs on counsel for appellant. Coxe v. Peck-Williamson Heating & Ventilating Co. (C.C.A.) 208 F. 409; Hughes v. Lodwick Lumber Co. (C.C.A.) 41 F.(2d) 225; United States v. Howard (C.C.A.) 64 F.(2d) 533; Trust Co. of Florida v. Gault (C.C.A.) 69 F.(2d) 133. We do not take such action here, but with this word of warning we shall feel free to do so in the future.

The judgment is affirmed.