Berniece I. DEAN, Guardian of Grover C. Dean, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 6950.

United States District Court
W. D. Oklahoma.

April 1, 1957.

Kay Wilson, Jr., Muskogee, Okl., for plaintiff.

Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

The plaintiff, Berniece I. Dean, brings this action to recover for the total permanent disability of her ward, Grover C. Dean, pursuant to a $5,000 War Risk Policy held by such ward. The Government urges that the sued upon policy is no longer in effect, having expired on November 26, 1933 for non-payment of premium; and, that regardless, the plaintiff did not institute this action within the time allowed by the limitation provisions of the World War Veterans' Act, 1924, as amended, Title 38 U.S.C.A. § 445.

The undisputed evidence reveals that the insured enlisted in the United States Army on October 3, 1917, and was discharged therefrom April 5, 1919. Originally this veteran was insured for $10,000, but such policy lapsed from premium payment failure. However, on October 1, 1919, a $5,000 portion of the lapsed insurance was reinstated and converted to United States Government life insurance on the 20-payment life plan. Premiums were paid on the $5,000 converted insurance through November 30, 1931, with default occurring December 1, 1931. The reserve value of the policy, less the amount of an outstanding loan with accrued interest thereon, pursuant to policy terms was applied to purchase extended insurance for a period of one year and 361 days. This extended period expired November 26, 1933.

The sole issue is whether or not the instant veteran was permanently insane prior to premium default on the controverted policy, thus bringing into effect the saving clause of Section 445[1] and resulting in total permanent disability within the terms of such policy.

■■ Courts cannot look with favor upon actions instituted many years after the relied upon causes first arose. As time passes the true facts become progressively more obscure and difficult to determine. And, in connection with War Risk Insurance, Congress has specifically provided that, in the absence of a legal disability of the party involved, claims must be instituted within six years from the time the claim has its genesis. However, if the very condition giving birth to the claim, such as disability through insanity, has the concomitant quality of preventing the insured from taking steps to protect his legal rights then the mere lapse of time cannot defeat a meritorious claim.

The issue presented is particularly vexing inasmuch as although a determination of insanity cannot rest upon mere speculation or conjecture,[2] yet, it cannot lie within the *certain* knowledge of this, or any other court to judge whether the instant ward was incompetent in January of 1930.

■ The Government heavily relies upon a number of medical reports prepared during the early 1930's which indicate that several different examining physicians did not consider this veteran incompetent. These expert opinions are highly persuasive and in most instances would be conclusive. However, under the peculiar circumstances of this case the court does not feel bound by such opinions. It is uncontroverted that on February 7, 1940, plaintiff's ward was ruled incompetent by the Veteran's Ad-

1. 38 U.S.C.A. § 445 insofar as material here states: " * * * no suit on United States Government life (converted) insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made: *Provided*, That for the purposes of this section it shall be deemed that the right accrued on the happening of the contingency on which the claim is founded:

*Provided further*, * * * [i]nfants, insane persons, or persons under other legal disability, or persons rated as incompetent or insane by the Veterans' Administration shall have three years in which to bring suit after the removal of their disabilities * * * "

2. United States v. Krueger, 7 Cir., 1935, 77 F.2d 171.

ministration and given certain veteran's benefits. These benefits are still being allowed. Although this 1940 finding cannot, of itself, establish the alleged earlier incompetency, such finding together with events occurring subsequent to 1930 are factors properly cognizable in this action.[3] Such is particularly persuasive where as here there was no objective evidence of either a marked or even discernible change in the insured's mental condition when in 1940 he was ruled incompetent.

 Unquestionably the mental shortcoming now in view has existed for many years. There is lay testimony, by relatives of Dean and by other persons in a position to know, that the insured was possessed of certain peculiarities in early childhood. And, this testimony further establishes that after Dean returned from the service marked abnormalities were noticeable. These mental irregularities reached a climax in about the early 1930's.[4] During 1930 and 1931 plaintiff's ward submitted to a number of physical and mental examinations. These examinations were prompted, among other things, by extreme nervousness and a constant ringing sound in his head. The lay evidence is unequivocal that from 1930 up through 1940 and on to the present time there has been no observable change in Dean's mental condition; and, that his actions throughout this entire time were not those of one who was sane or normal.[5] Certainly Dean is not a raving maniac. In many respects he is endowed with considerable intelligence. However, to be incompetent in the eyes of the law one need neither be a violent madman nor a babbling idiot. The test is purely whether the subject is not sane or not competent as compared with accepted normalcy.[6] The various reports made by examining physicians during the time germane to this lawsuit, although bearing conclusions of "competency", nonetheless contain evidence of abnormality which tends to corroborate the testimony of the various lay witnesses.[7]

3. As mentioned in Halliday v. United States, 1941, 315 U.S. 94, 98, 62 S.Ct. 438, 441, 86 L.Ed. 711: "While it is true that total and permanent disability prior to the expiration of the insurance contract must be established, evidence as to petitioner's conduct and condition during the ensuing years is certainly relevant. It is a commonplace that one's state of mind is not always discernible in immediate events and appearances, and that its measurement must often await a slow unfolding. This difficulty of diagnosis and the essential charity of ordinary men may frequently combine to delay the frank recognition of a diseased mind. Moreover, the totality and particularly the permanence of the disability as of 1920 are susceptible of no better proof than that to be found in petitioner's personal history for the ensuing 15 years."

4. Nonexpert witnesses, acquainted with and having sufficient opportunities to observe person whose insanity is in question, may give their opinions as to his mental condition after stating facts observed by witnesses. Schatz v. Wintersteen, 1949, 201 Okl. 660, 208 P.2d 1136; Brown v. Chaddick, 1946, 197 Okl. 515, 172 P.2d 996.

5. Cf. Oklahoma Natural Gas Corporation v. Lay, 1935, 175 Okl. 75, 51 P.2d 580, 582, wherein it was observed: "The counsel for defendant contend in their brief that unsoundness of mind cannot be established by lay testimony alone, and that some expert testimony is necessary. They cite no authorities directly to this point. We do not think that the cases cited by them are applicable to this kind of case. The court knows of no decision requiring expert testimony in this kind of a case."

6. As observed in United States v. Portland Trust & Savings Bank, 9 Cir., 1944, 140 F.2d 708, 713: "The jury need not believe that the veteran was a raving lunatic at the crucial date of July 3, 1931. Before that time he might well have held an office boy's job, working under close supervision, and still not have been able to protect his rights under the World War Veterans' Act. * * * Nor does the fact that Mahoney [the insured] took vocational training in 1922 refute the assertion that he was totally and permanently disabled. * * *"

7. (1) The report of the U. S. Veterans' Hospital, North Little Rock, Arkansas (Staff Diagnostic Conference) dated May 22, 1930, provides in part: "His present illness, he says, began in 1921, when he began to be troubled with a ring-

544

■ It is the court's opinion that plaintiff's ward has been incompetent since January 1, 1930, and that such resulted in the total and permanent disablement of Dean. The insured has been unable to follow continuously any substantially gainful occupation,[8] and, it is reasonably certain such disability will continue throughout his lifetime.

In light of the insured's permanent total disability by virtue of insanity,

ing in the left ear. In 1913 and again in 1924, he had periods of blindness, lasting one-half hour. Ever since that time, he has been nervous, has been troubled with his eyes blinking, dizzy spells, inability to stand noises, and for the past five years has been avoiding crowds. * * * He has adapted himself only fairly well to his surroundings. He is disgruntled to think that he is on a closed ward and has shown no interest in assisting any with the ward activities. He seems to feel he is a little superior to the other patients and sits away in one corner reading. He does not care for the radio, says it annoys him, and on one occasion broke the connection so the others could not enjoy it. He has been un-cooperative in every respect, faultfinding and complaining. * * * He seems to be worried and anxious over something. He is very egotistical and boastful. Feels that he knows more about medicine than the Staff, is inclined to be disdainful, and pooh-poohs all suggestions made to him. He feels that those associated with the Bureau are apparently incompetent to properly handle his case. * * * Insight is lacking and judgment is defective * * * Patient was presented to Staff this date after twelve days observation. The Staff hesitated to make a diagnosis of Constitutional Psychopathic State, but felt that there was a constitutional basis for his N.P. condition. After discussion, the Staff agreed upon the diagnosis of Neurasthenia, based upon his emotional instability, his physical complaints without organic basis, and his introspective attitude. * * * The neurasthenic condition is thought to be productive of a moderate degree of social and industrial inadaptability. *Diagnosis:* * * * Psychoneurosis, Neurasthenia, Moderate * * *"

(2) Admission and Discharge Examination of U. S. Veterans' Hospital dated May 5, 1930, provides in part: "Present Illness: * * * I have continual ringing in my ears, am very nervous. Have some throat and chest trouble. My eyes burn with fever at spells. 'My arm is giving me more pain than usual.' Is subject to having blind spells. Recently has been having severe headaches. * * * Summary: * * * Patient has been only fairly co-operative while on ward, making absurd statements about

condition for which there are no objective symptoms. * * * Examiner believes this patient is a neurasthenic. * * * "

(3) Examination report by Dr. A. H. Mountford, dated May 14, 1930, states in part: "Mental Status * * * *Hallucinations:* Hallucinations of sight, hearing, taste, smell and contact are denied, although patient complains of a ringing in his ears. He is rather indefinite regarding the explanation of this ringing like bells. * * * *Insight and Judgment:* Patient apparently has no insight into his condition. His judgment is defective, as shown by his continually doubting physicians with reputation when they render a diagnosis which does not seem to coincide with his ideas."

(4) Notes by Consultant Specialist in Neuropsychiatry (Dr. A. R. Vonderahe, dated January 13, 1931, provide: "*Supplementary History.* Patient complains of extreme nervousness; of ringing in the ears; of a constant feeling of fatigue. He states that he is not working at the present time. After any slight exertion he states he becomes dizzy, aware of his heart beat, breathlessness and being quicky tired out. Has terrifying dreams, and is occasionally depressed. * * * Diagnosis. Psychoneurosis, neurasthenia, moderately severe. *Comment.* The diagnosis of Psychoneurosis, neurasthenia is based upon the subjective complaints of nervousness, dizziness, trembling, breathlessness, awareness of heart beat after slight exertion, constant feeling of exhaustion and fatigue, and objectively on the presence of hyperactive reflexes, increased muscle tone, myotatic irritability, tremor of the extended hands, irritability of the pulse rate and dermographia. Patient is regarded as competent and sane. The history of military service, together with the injury sustained, are regarded as the precipitating factors in the psychoneurosis. The patient is not regarded as having a constitutional psychopathic inferiority. The Consultant Psychologist points out how factors in the early life of the patient contributed to the psychoneurotic trends, but available records indicate that the psychoneurosis itself developed under the stress of military service. * * * "

8. See Hughes v. United States, 10 Cir. 1936, 83 F.2d 76.

the sued upon policy has not expired or lapsed, and the plaintiff is entitled to judgment equal to $28.75 for each month since January 1, 1930, up to this date. And, this monthly payment shall continue throughout the life of plaintiff's ward or until his total disability no longer exists.

The court recognizes that 10% of the total amount recovered is a reasonable attorney's fee for plaintiff's counsel; and, this fee should be paid out of the recovered funds.

Within 15 days counsel should submit a journal entry which conforms with this opinion.