NAMUA AFATASI, Plaintiff

v.

MAX HO CHING, Defendant

High Court of American Samoa
Trial Division

CA No. 106-89

December 13, 1990

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, and AFUOLA, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
For Defendant, William H. Reardon

Five years ago defendant intentionally shot plaintiff, inflicting serious injuries. As a result of these injuries plaintiff is paralyzed from the waist down, evidently for life, and has suffered a variety of ancillary disabilities and illnesses.

In December 1989, over four years after the shooting, plaintiff brought this action for damages. Defendant argues that the action is barred by the two-year statute of limitations for actions founded on injuries to the person. *See* A.S.C.A. § 43.0120(2).

Plaintiff agrees that this is the applicable statute of limitations, but contends that as a result of the injury he was rendered "insane" within the meaning of A.S.C.A. § 43.0126. This section provides that "[m]inors and insane persons" shall have one year from after the termination of such disability within which to commence an action, regardless of any otherwise applicable statute of limitations.

The word "insane" in statutes providing for the tolling of a limitation period is generally construed as synonymous with terms such as "mentally incompetent." *See, e.g.*, *United States v. Portland Trust & Savings Bank*, 140 F.2d 708 (9th Cir. 1944); *Adkins v. Nabors Alaska Drilling, Inc.*, 609 P.2d 15, 23 n.12 (Alaska 1980); *Harrington v. County of Ramsey*, 279 N.W.2d 791 (Minn. 1979); *Jaime v. Neurological Hospital Association of Kansas City*, 488 S.W.2d 641 (Mo. 1973); *Lowe v. Pue*, 257 S.E.2d 210 (Ga. App. 1979). Tolling of the limitation period on account of insanity, incompetence, or mental incapacity does not require that a person be a "raving maniac," a "violent madman," or a "babbling idiot." *Dean v. United States*, 150 F. Supp. 541, 543 (W.D. Okla. 1957). It does not require a prior legal adjudication of incompetency. *Browne v. Smith*, 205 P.2d 239 (Colo. 1949). Nor is it either necessary or sufficient that there be a clinical diagnosis of a pathological condition such as dementia or schizophrenia. *Dean, supra*; *Lowe, supra*; *Graboi v. Kibel*, 432 F. Supp. 572 (S.D.N.Y. 1977).

174

Rather, the test is whether the potential plaintiff suffered, during what otherwise would have been the limitation period, from a "'mental disorder resulting in inability to manage one's affairs.'" *Browne, supra,* 205 P.2d at 241 (quoting Webster's dictionary). *Accord, Graboi, supra; Adkins, supra; Pearl v. Pearl,* 177 P. 845 (Cal. 1918); *Harrington, supra; Jaime, supra; Lowe, supra.*

The "inability to manage one's affairs" test is a functional one for which the best evidence is empirical. Evidence that someone has enrolled in school, secured passports and visas, or filed another lawsuit tends to show that he was not "insane" within the meaning of the tolling provision even though suffering from a clinical neurosis or psychosis. *See, e.g., Graboi, supra; McCarthy v. Volkswagen of America, Inc.,* 435 N.E.2d (N.Y. 1972). On the other hand, "[p]laintiffs have engaged in a surprising amount of activity and still have successfully claimed to be incompetent under a tolling statute." *Adkins, supra,* 609 P.2d at 23. A person can be incompetent although he "is endowed with considerable intelligence" or has held a job and become a parent during the period of incompetence. *Dean, supra,* 150 F. Supp. at 543; *see United States v. Portland Trust & Savings Bank, supra; Valisano v. Chicago & N.W. Ry. Co.,* 225 N.W. 607 (Mich. 1929). The more things a plaintiff did that were similar to filing a lawsuit, the less likely it is that a mental disorder rendered him incompetent to file one.

The evidence of mental disorder in the present case consisted largely of the testimony of plaintiff's treating physician. In response to a question about the plaintiff's "state of mind" after the accident, the doctor testified in pertinent part:

> Well, the first three months was very difficult for him
> . . . . Now a young man of 18 and you find out you're
> paralyzed and you're totally paralyzed for life, it's
> something very devastating in your life and so I
> brought the family in and also his sisters to try and talk
> to him. He was very very distant in the first three
> months in the hospital. He talked very little. He was
> unhappy. . . . I've asked our psychiatrist to talk with
> him . . . to try and get him back to a normal thing like
> people his age . . . .

In response to a later question from the Court about whether he observed anything tending to show whether the defendant had the "mental equipment" to have "managed his affairs," the doctor testified:

Well, the first year I had him, I thought to myself that this guy is not a fighter. He's going to keep on going down and down and down . . . . I sent him quite a number of times to try and get him to know other people so that he can communicate with me and to me, it didn't solve anything at all because he was still --- I would come in and talk to him and he answers with very little words. So now you ask me the question if I think he can manage his affairs. Being the guy he [now] is who is happy . . . I think he's accepted that he should be happy with the way things are. That's my interpretation of the way he looked in the last two years, but before that, I thought he's not a fighter. He was a goner as a human being.

The Court also asked the plaintiff himself why he had not filed suit earlier than 1989. The following exchange ensued:

THE WITNESS: I was undecided at the time and I did not have that strength. I didn't have enough strength to come here by wheelchair.

THE COURT: You mean physical strength or mental strength or something else?

THE WITNESS: Physical and mental strength.

The testimony of both the plaintiff and the doctor was to the effect that plaintiff did essentially nothing for several years after the accident. He stayed at home and was taken care of by his mother except on those occasions when he was driven to the hospital in an ambulance for therapy sessions at which he was unresponsive and generally listless. He was also admitted on an inpatient basis several times, for a total of about six months during the three years after the accident. Although his illnesses would begin as localized disorders in areas (usually the bowels or urinary tract) in which plaintiff's paralysis prevents him from feeling pain, these would give rise to systemic disorders with symptoms including fever, frequent vomiting, and dehydration.

Both the doctor and the plaintiff also testified that the plaintiff underwent a dramatic change in or around the middle of 1989. The doctor testified that

I met him for the first time after I was away for two months on holiday and he was a different boy. He

176

looked happy and he was talking with girls and boys his age outside of my clinic, but he was really different. . . I noticed there was a different guy. . .

Within a few months the results of plaintiff's therapy improved, he began socializing regularly with other disabled young people, and he got a job. He also consulted an attorney, who filed the present lawsuit.

We conclude that the plaintiff did suffer between 1985 and 1989[1] from a mental disorder which made him incapable of managing his own affairs. "A temporary mental affliction arising from the accident in question may give rise to the toll for insanity." *McCarthy, supra*, 435 N.E.2d at 1074 (citing *Matter of Hurd v. County of Allegany*, 336 N.Y.S.2d 952(19__)). This is not to say that everyone who is depressed or confused because of an injury --- or even everyone who must suddenly cope with the fact that he will be paralyzed for life --- is incompetent to file suit. In this case, however, the objective evidence of plaintiff's actions or lack thereof between 1985 and 1989 supports the doctor's testimony that the "devastating" psychological effects of the plaintiff's paralysis gave rise to a profound inability or unwillingness to communicate with anyone or accomplish anything during this period.[2]

---

[1] The doctor's testimony contains several references to "the last two years" as the period during which the defendant had been "a different boy." The most specific reference to timing, however, are that the transformation occurred "last year" and "about a year ago . . . after I was away for two months on holiday." The trial was held in late 1990. "Last year" was 1989 and "about a year ago" was in mid-to-late 1989. The only plausible way to read all the doctor's statements together is that "the last two years" refers to calendar years 1989 and 1990. If the plaintiff became competent at any time after December 7, 1988, then the filing of this action was timely. *See* A.S.C.A. § 43.0126.

Contrary to a suggestion in defendant's post-trial submission, the evidence clearly shows that plaintiff's mental condition began immediately after the shooting. Moreover, although the defendant is correct that statutes of limitations are generally tolled only by incapacity beginning on or before the day the cause of action accrued, it has been held that a mental condition resulting from the wrongful act of the defendant himself gives rise to an equitable exception to this rule. *Kyle v. Green Acres at Verona, Inc.*, 207 A.2d 513 (N.J. 1965).

[2] Such inactivity might conceivably be explained by reference to the physical injuries themselves rather than to a resulting mental condition. There is, however, no evidence that plaintiff engaged even in such routine activities as a normal person in a wheelchair would do. Soon after the doctor noticed the dramatic transformation in plaintiff's mental condition, however, he did engage in such activities.

Plaintiff's mental condition appears to have been similar to that of the benefit claimant in *United States v. Portland Trust & Savings Bank, supra*, whose war injuries apparently caused him to have "changed considerably; . . . he was irritable and nervous,

In the absence of expert psychiatric testimony we cannot say whether this severe depression, etc., had a clinical name or names, but its nature and degree are fairly stated in the treating physician's observation that plaintiff was going "down and down and down" and was "a goner as a human being." He could not manage his affairs.

There is little dispute concerning the merits of the action. The defendant pled guilty to an intentional assault and is estopped from denying the truth of his plea. *See Galea'i v. Atofau*, CA No. 72-89 (Opinion and Order issued August 20, 1989). Plaintiff also presented testimony from which we can only conclude that the shooting was intentional and calculated to produce death or serious physical injury. The plaintiff has suffered physical pain not only from the shooting but also from the numerous illnesses associated with his paralysis. For the rest of his life he will suffer the mental and emotional injuries attendant to paralysis, to being confined to a wheelchair, to the loss of the sexual function, and to having other people tend to his personal bodily functions. We assess the damages caused by these injuries at $50,000.

The medical witness recommended that plaintiff participate in certain off-island therapy programs for which, as a Western Samoan national, he is ineligible for American Samoa Government financial assistance. Although we left the record open for plaintiff to present evidence of the cost of these programs, he has not done so. The cost of the therapy programs available in the Territory is trivial. We therefore assess no damages for medical expenses.

We award no punitive damages because we believe the punitive and exemplary purposes of such an award will be fulfilled in the present case by the substantial compensatory damages.

---

very touchy, and seemed to be bothered by everything; . . . sat around the house with a stare on his face, frequently not answering until spoken to several times; . . . . was irritable, feeling that he was getting the worst of things; . . . took no interest in anything; . . . there was a decided change in his feeling as to whether people were against him." 140 F.2d at 710. This condition was found to have tolled the statute of limitations. *Id.* at 712. *See also Dean v. United States, supra*, 150 F. Supp. at 543 & n.7 (statute of limitations tolled by "mental irregularities" characterized by various physical symptoms and by the claimant's assertions of superiority to others, irritability, uncooperativeness, anxiety, lack of insight, emotional instability, and introspective attitude).

Judgment will enter for plaintiff and against defendant in the amount of $50,000 plus court costs of $55.

It is so ordered.

